1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON
7                            AT SEATTLE

8
   Z.D., by and through her parents and
9  guardians, J.D. and T.D., individually, on       No.  C11-1119RSL
   behalf of THE TECHNOLOGY ACCESS
10 FOUNDATION HEALTH BENEFIT                         ORDER DENYING
   PLAN, and on behalf of similarly situated        DEFENDANTS' 12(b)(6)
11 individuals,                                      MOTION TO DISMISS

12                          Plaintiffs,

13              v.

14 GROUP HEALTH COOPERATIVE;
   GROUP HEALTH OPTIONS, INC.; and
15 THE TECHNOLOGY ACCESS
   FOUNDATION HEALTH BENEFIT
16 PLAN,

17                          Defendants.

18          This matter comes before the Court on "Defendants' Motion to Dismiss"

19 (Dkt. # 7).  Defendants contend that dismissal with prejudice is warranted because (1)

20 Plaintiffs failed to exhaust their internal appeal rights; (2) Group Health's denial of

21 benefits was consistent with the language of the Plan; (3) Plaintiffs do not allege and

22 cannot establish that Group Health acted in a fiduciary capacity or that the Plan was

23 harmed; (4) Plaintiffs are not entitled to equitable relief; and (5) ERISA preempts any

24

25

26

claim based on the Washington Mental Health Parity Act.  For the reasons set forth below, the Court DENIES Defendants' motion.

## BACKGROUND

In the context of a motion to dismiss, the Court's review is generally limited to the contents of the complaint.  <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir. 1996).  It may also extend, however, to include evidence on which the "complaint 'necessarily relies,'" if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  <u>Daniels-Hall v. Nat' Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010) (citations and internal quotation marks omitted).

Thus, for purposes of this motion, the Court considers only the allegations contained within the "Amended Complaint" (Dkt. # 3), which the Court accepts as true and construes in the light most favorable to Plaintiffs.  <u>Daniels-Hall</u>, 629 F.3d at 998. The Court also relies on the Plan Agreement itself, which Defendants attach to their Motion, Carroll Declaration (Dkt. # 8) at 5–55 (Exhibit A, Group Health Medical Coverage Agreement).  The Court does not consider those factual allegations asserted only in the parties' memoranda.

## THE ALLEGATIONS

Plaintiffs filed suit against Defendants in federal court on July 6, 2011. Complaint (Dkt. # 1).  On July 12, prior to the filing of any responsive documents,

Plaintiffs filed their "Amended Complaint" (Dkt. # 3). As is relevant to the disposition of this Motion, Plaintiffs allege the following:

Plaintiff Z.D. is the ten-year old daughter and dependant of J.D. and T.D. She is a beneficiary of "The Technology Access Foundation Health Benefit Plan," an ERISA "employee welfare benefit plan," 29 U.S.C. § 1002(1), underwritten and administered by Group Health Options, Inc.—a wholly owned subsidiary of Group Health Cooperative. Amended Complaint (Dkt. # 3) at ¶¶ 1–5. Z.D. and the proposed class of Plaintiffs are beneficiaries of health plans "delivered, issued for delivery, or renewed on or after January 1, 2006." Id. at ¶ 15.

Z.D. has been diagnosed with one or more of the conditions listed in the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. Text Revision ("DSM-IV-TR"). Id. at ¶¶ 11, 17. On or after January 1, 2006, she sought coverage from Defendants for the treatment of her mental disorders, but Defendants denied her requests and refused to reimburse her for or authorize treatment. Id. at ¶¶ 17, 23, 25. Z.D. unsuccessfully attempted to appeal these denials through the internal administrative processes set forth in the Plan. Id. at ¶ 27.

Notably, the Plan does not explicitly require Defendant to cover the treatment for which Z.D. has submitted her requests. Rather, the Plan states only:

> **2. Neurodevelopmental Therapies for Children Age Six (6) and Under.** Physical therapy, occupational therapy and speech therapy services for the restoration and improvement of function for neurodevelopmentally disabled children age six (6) and under shall be covered. Coverage includes maintenance of a covered Member

in cases where significant deterioration in the Member's condition would result without the services.

Carroll Declaration (Dkt. # 8) at 37 (Exhibit A, Group Health Medical Coverage Agreement). Nevertheless, Plaintiffs contend that Washington's Mental Health Parity Act, specifically those provisions codified at RCW 48.46.291, supplements the literal terms of the Plan and precludes Defendants from denying Z.D.'s claims for coverage. Amended Complaint (Dkt. # 3) at ¶¶ 8–14, 18.

Accordingly, Plaintiffs allege that Defendants have applied "policies and practices that result in the exclusion and improper limitation of certain services to treat conditions listed in the DSM-IV-TR" and "have acted on grounds generally applicable to a broad group of individuals" situated similarly to Z.D. Id. at ¶ 20. They seek to recover the "benefits due them due to [Defendants'] improper exclusion and/or limitations of behavioral and neurodevelopmental therapy." Id. at 36–38 (relying on 29 U.S.C. § 1132(a)(1)(B)). They seek the recovery of all losses to the Plan for Defendants' alleged failure "to act in accordance with the documents and instruments governing the Plan." Id. at ¶¶ 28–35 (relying on 29 U.S.C. § 1132(a)(2) ("breach of fiduciary duty")). And they ask the Court to enjoin Defendants from continuing to process and pay claims in a manner inconsistent with RCW 48.46.291 and grant any other equitable relief the Court deems appropriate. Amended Complaint (Dkt. # 3) at 39–41 (relying on 29 U.S.C. § 1132(a)(3)).

**DISCUSSION**

To reiterate, Defendants contend that dismissal with prejudice is warranted because (1) Plaintiffs failed to exhaust their internal appeal rights; (2) Group Health's denial of benefits was consistent with the language of the Plan; (3) Plaintiffs do not allege and cannot establish that Group Health acted in a fiduciary capacity or that the Plan was harmed; (4) Plaintiffs are not entitled to equitable relief; and (5) ERISA preempts any claim based on the Washington Mental Health Parity Act. The Court considers each of these contention in turn.

**A. Exhaustion of Administrative Remedies**

Defendants first assert that dismissal is warranted because Plaintiffs failed to exhaust their internal appeal rights. The Court agrees that controlling case law requires that a plaintiff first "avail himself or herself of a plan's own internal review procedure before bringing suit in federal court." Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 626 (9th Cir. 2008). That said, "the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense," not a pleading requirement. Jones v. Bock, 549 U.S. 199, 211 (2007). The Court therefore finds no basis for Defendants' first contention.[1]

**B. Denial of Benefits & ERISA Preemption**

Defendants next contend that they acted in conformity with the terms of the Plan when they denied Plaintiffs' claims for mental health treatment. Alternatively,

---

[1] The Court also notes that Plaintiffs allege at paragraph 27 of the Amended Complaint that "Z.D. has tried to pursue her internal administrative remedies at GHC, to no avail."

Defendants assert that even if RCW 48.46.291 might otherwise require coverage, ERISA preempts the statute's application.

It is true that the literal terms of the Plan, as written, do not require coverage for the mental health treatment of individuals over the age of six. Carroll Declaration (Dkt. # 8) at 37 (Exhibit A, Group Health Medical Coverage Agreement). The problem for Defendants lies in the fact that Washington law governs the Plan. Id. at 8, ¶ 8 ("The Group and the GHO shall comply with all applicable state and federal laws and regulations in performance of this Agreement. This Agreement is entered into and governed by the laws of the state of Washington, except as otherwise pre-empted by ERISA and other federal laws."). And, as alleged by Plaintiffs, Washington law, specifically RCW 48.46.291(2),[2] requires Defendants to provide coverage for the mental health services at issue in this case. See FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990) ("The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer."). That section provides:

> (2) All health benefit plans offered by health maintenance organizations that provide coverage for medical and surgical services shall provide:
>
> (a) For all group health benefit plans for groups other than small groups, as defined in RCW 48.43.005 delivered, issued for delivery, or renewed on or after January 1, 2006, coverage for:
>
> (i) Mental health services. The copayment or coinsurance for mental health services may be no more than the copayment or coinsurance for medical and surgical services otherwise provided under the health benefit plan. Wellness and preventive

---

[2] The Court turns to RCW 48.46.291(2) given Plaintiffs' definition of the purported class in paragraph 15 of the Amended Complaint.

services that are provided or reimbursed at a lesser copayment, coinsurance, or other cost sharing than other medical and surgical services are excluded from this comparison; and

(ii) Prescription drugs intended to treat any of the disorders covered in subsection (1) of this section to the same extent, and under the same terms and conditions, as other prescription drugs covered by the health benefit plan.

RCW 48.46.291(2) (emphasis added).

To avoid the implications of RCW 48.46.291's mandate, Defendants argue that its provisions conflict with Washington's previously enacted Neurodevelopmental Therapy Mandate, which provides in part:

Each employer-sponsored group contract for comprehensive health care service which is entered into, or renewed, on or after twelve months after July 23, 1989, shall include coverage for neurodevelopmental therapies for covered individuals age six and under.

RCW 48.44.450(1). They contend that RCW 48.44.450 limits the benefits available to individuals in need of neurodevelopmental therapies, and that this limit controls over the more general mandate of RCW 48.46.291. The Court disagrees.

"The purpose of statutory construction is to give effect to the meaning of legislation." Walker v. Wenatchee Valley Truck & Auto Outlet, Inc., 155 Wn. App. 199, 208 (2010). And the mere fact that the statutes overlap does not mean that both cannot apply. Id. Rather, "[i]n the case of multiple statutes or provisions governing the same subject matter, effect will be given to both to the extent possible." Id. Efforts must be made to harmonize overlapping statutes. Id.; accord Davis v. King County, 77 Wn.2d 930, 933 (1970) ("Where two legislative enactments relate to the same subject

matter and are not actually in conflict, they should be interpreted to give meaning and effect to both. Such construction gives significance to both acts of the legislature."). "Only when two statutes dealing with the same subject matter "conflict to the extent that they cannot be harmonized" will a more specific statute supersede a general statute. Walker, 155 Wn. at 208.

The Court finds no irreconcilable conflict between RCW 48.44.450 and RCW 48.46.291. By its plain terms, RCW 48.44.450 evidences legislative intent to establish a minimum mandatory level of "coverage for neurodevelopmental therapies for covered individuals age six and under." Equally plain, however, is that RCW 48.44.450 does not preclude providers from extending that same coverage to individuals older than six. The statute establishes a floor, not a ceiling.

When it enacted RCW 48.46.291, Washington raised the minimum standard by further requiring that mental health coverage "be delivered under the same terms and conditions as medical and surgical services." H.B. 1154, 59th Leg., Reg. Sess., ¶ 1 (Wash. 2005). This new burden does not conflict with RCW 48.44.450. Cf. UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 377 (1999) ("By allowing a longer period to file than the minimum filing terms mandated by federal law, the [state law] notice-prejudice rule complements rather than contradicts ERISA and the regulations."). Defendant can readily comply with both statutes simply by comporting with the parity requirements of RCW 48.46.291 for all covered individuals, keeping in mind that RCW 48.44.450 confers a more specific and more onerous requirement upon

Defendants to provide "neurodevelopmental therapies for covered individuals age six and under" without regard for parity. This "construction gives significance to both acts of the legislature." Davis, 77 Wn.2d at 933.

Having determined that RCW 48.44.450 does not negate the mandate of RCW 48.46.291, the Court next considers Defendants' contention that ERISA preempts RCW 48.46.291's effect. Defendant has not convinced the Court that it does. Normally, "ERISA preempts 'any and all state laws insofar as they relate to any [covered] employee benefit plan.'" Standard Ins. Co. v. Morrison, 584 F.3d 837, 841 (9th Cir. 2009) (alteration in original) (quoting 29 U.S.C. § 1144(a)). However, "the so-called savings clause saves from preemption 'any law of any state which regulates insurance, banking, or securities.'" Id. (emphasis added) (quoting 29 U.S.C. § 1144(b)(2)(A)).

To fall within this savings clause, the state law must satisfy the two-part test set out by the Supreme Court in Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 342 (2003). Standard Ins., 584 F.3d at 842. "First, the state law must be specifically directed toward entities engaged in insurance." Ky. Ass'n, 538 U.S. at 342. Second, "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." Id. RCW 48.46.291 readily satisfies both elements. Cf. Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 758 ("We hold that Massachusetts' mandated-benefit law is a 'law which regulates insurance' and so is not pre-empted by ERISA as it applies to insurance contracts purchased for plans subject to ERISA.").

As Plaintiffs argue, the statute is directed at "health benefit plans," which are, by definition, underwritten by an "insurer." RCW 48.43.005(23), (24). In addition, the statute acts to "control the actual terms of insurance policies." Ky. Ass'n, 538 U.S. at 337. Thus, the statute is clearly directed toward entities engaged in insurance. Standard Ins., 584 F.3d at 842 ("It is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies.").

The Court is also presently convinced that RCW 48.46.291 affects the risk pooling arrangement between the insurer and the insured. As discussed at length in Standard Ins., this second requirement was intended predominately to ensure that only those state regulations "targeted at insurance practices, not merely at insurance companies" escaped preemption. Id. at 844; see id. at 844–45. And, as Metropolitan Life makes clear, a state law mandating mental health care services "obviously regulates the spreading of risk"; it reflects "legislative judgment that the risk of mental-health care should be shared." 471 U.S. at 758.

In sum, the Court concludes that RCW 48.46.291 controls. It is neither negated by RCW 48.44.450 nor preempted by ERISA. Moreover, the Court finds that Plaintiffs have plead adequate facts to set forth the required "short and plain statement." They allege sufficient facts to establish for present purposes that they fall within the statutory definition of those entitled to coverage. Compare RCW 48.46.291(1) (defining "mental health services"), with Amended Complaint at ¶ 23–24 (alleging that Plaintiffs have been diagnosed with mental conditions covered under the statutory

definition).  And Plaintiffs further allege that they have been denied benefits by

Defendants despite that statutory entitlement.  <u>E.g.</u>, Amended Complaint at ¶ 25–27.

These factual allegations are sufficient.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)

("A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.").  The Court concludes that Defendants' second and fifth contentions are

without merit.

## C.  Fiduciary Capacity

The Court next considers Defendants' claim that Plaintiffs have not stated

a claim for breach of fiduciary duty.  Defendants argue two points.  First, relying on

their previously discussed contention that RCW 48.46.291 does not affect the terms of

the plan, Defendants assert that they exercised no fiduciary discretion in denying

Plaintiffs' benefits.  Motion (Dkt. # 7) at 21.  Second, Defendants argue that Plaintiffs

allege only harm to the beneficiaries and not harm to the Plan.  They contend that this

failure precludes Plaintiffs from obtaining relief under any ERISA provision other than

§ 1132(a)(1)(B).

The Court readily dispatches with Defendants' first assertion.  As

discussed, the terms of the Plan require that Defendants "comply" with Washington law

in the performance of the parties' Plan Agreement.  Carroll Declaration (Dkt. # 8) at 8,

¶ 8 (Exhibit A, Group Health Medical Coverage Agreement).  Accordingly, Defendants

were required to comply with RCW 48.46.291 "in the performance" of fulfilling their

fiduciary function of making benefit determinations.  Compare id., with Aetna Health

Inc. v. Davila, 542 U.S. 200, 218–19 (2004) ("A benefit determination under ERISA . . .

is generally a fiduciary act."  It "is part and parcel of the ordinary fiduciary

responsibilities connected to the administration of a plan."); see also 29 U.S.C. §

1104(a)(1)(D) (conferring a fiduciary duty on plan administrators to discharge his duties

"in accordance with the documents and instruments governing the plan" (emphasis

added)); 29 C.F.R. § 2509.75-8 (1995) ("[A] plan employee who has the final authority

to authorize or disallow benefit payments in cases where a dispute exists as to the

interpretation of plan provisions . . . would be a fiduciary within the meaning of section

3(21)(A) of the Act.").

Defendants' second contention is equally unconvincing.  Even assuming

that it would be appropriate to dismiss a redundant § 1132(a)(3) claim at this stage in the

litigation,[3] Plaintiffs allege a claim broader than that which could be remedied under

§ 1132(a)(1)(B).  As stated in paragraph 13 of the Amended Complaint, Plaintiffs allege

that "GHC is systematically and uniformly failing to properly process claims and

administer the Plans it insures."  Plaintiffs seek relief compelling Defendants to restore

to the Plan all losses arising from its breach.  Amended Complaint (Dkt. # 3) at ¶ 40–41.

And Plaintiffs seek both injunctive relief enjoining Defendants from continuing to

_____

[3]  Contra In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig., 2005
WL 1972565, at * 3 (D. Or. Aug. 15, 2005) ("Defendants respond that plaintiffs are not entitled
to relief under § 1132(a)(3) because alternative remedies exist.  According to defendants, these
remedies include . . . recovery of allegedly lost plan benefits (§ 1132(a)(1)(B)).  While other
remedies ultimately may exist and be appropriate, the pleading stage is not the proper stage at
which to make that determination.").

manage its insured Plans in contravention of RCW 48.46.291 as well as appropriate

equitable relief.  Amended Complaint at ¶ 40–41.  These allegations and claims satisfy

the threshold plain-statement pleading requirement necessary to bring a cause of action

under § 1132(a)(2) and (a)(3).  <u>Mass. Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 140

(1985) (noting that a § 1132(a)(2) claim can be brought only "to make good to [a] plan

any losses to the plan . . . and to restore to such plan any profits of such fiduciary which

have been made through use of assets of the plan . . . ."); <u>Hill v. Blue Cross & Blue</u>

<u>Shield of Mich.</u>, 409 F.3d 710, 711 (6th Cir. 2005) (noting that a "fiduciary-duty claim

based on allegations of systemic, plan-wide claims-administration problems" is distinct

from a personal claim for the reimbursement of benefits under § 1132(a)(1)(B) because

"[o]nly injunctive relief of the type available under § 1132(a)(3) will provide the

complete relief sought by Plaintiffs by requiring [Defendant] to alter the manner in

which it administers all the Program's claims").

**D.  Equitable Relief**

Finally, the Court considers Defendant's claim that equitable and

injunctive relief are unavailable to Plaintiff because (1) Defendants were not acting in a

fiduciary capacity, (2) § 1132(a)(1)(B) is adequate to remedy any injuries Plaintiffs

suffered, and (3) money damages "are not an available remedy under ERISA's equitable

safety net," § 1132(a)(3).  Motion (Dkt. # 7) at 23–24.  The Court's prior discussion

resolves Defendants' first two contentions.

The third contention is directly disposed of by <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866, 1880 (2011), controlling authority that Defendants apparently failed to take note of prior to Plaintiffs' Response (Dkt. # 13). In <u>CIGNA</u>, the Supreme Court concluded that courts may award "monetary 'compensation' [pursuant to § 1132(a)(3)] for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." <u>Id.</u> To the extent Defendants attempt to re-characterize their argument in their Reply as stating that monetary relief under § 1132(a)(3) is unavailable because § 1132(a)(1)(B) provides an adequate remedy, that argument is redundant and, as previously explained, unpersuasive.

## CONCLUSION

Pursuant to the terms of the Plan itself, Defendants were obligated to comply with RCW 48.46.291 in their performance of the Agreement. Accordingly, Plaintiffs have sufficiently plead a short and plain statement that, if proven, would demonstrate Defendants' liability to Z.D. under § 1132(a)(1)(B) and Defendants' liability to the Plan under § 1132(a)(2). Moreover, because Plaintiffs allege that Defendants' failure is systemic, equitable relief may be available under § 1132(a)(3).

For all of the foregoing reasons, Defendants' Motion is DENIED.


DATED this 4th day of November, 2011.

_MMr S Lasnik_
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANTS' 12(b)(6) MOTION TO DISMISS - 14