1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

14

15

Z.D., by and through her parents and
guardians, J.D. and T.D., individually, on
behalf of THE TECHNOLOGY ACCESS
FOUNDATION HEALTH BENEFIT
PLAN, and on behalf of similarly situated
individuals,

　　　　　　Plaintiffs,

　　　v.

GROUP HEALTH COOPERATIVE, *et.
al.*,

　　　　　　Defendants.

No.  C11-1119RSL

ORDER GRANTING IN PART
PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

16

17

18

19

20

21

22

23

24

　　　This matter comes before the Court on "Plaintiffs' Motion for Class

Certification" (Dkt. # 42).  Plaintiffs ask the Court to certify two classes:  one comprised

of current and future beneficiaries who seek declaratory and injunctive relief precluding

Defendant Group Health from denying neurodevelopmental therapy coverage for

qualifying mental health conditions simply because an individual is over the age of six,

and one comprised of current and past beneficiaries seeking monetary damages on

account of Group Health's past denials of neurodevelopmental therapy coverage for

qualifying mental health conditions simply because they were over the age of six.  See

id. at 2–3.

25

26

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 1

The Court GRANTS the motion as to the first proposed class.  It finds however that Plaintiffs have not shown that class proceedings would be "superior to other available methods for fairly and efficiently adjudicating the controversy" as to the second proposed class, and thus DENIES the motion as to that proposed class.

## I.  BACKGROUND

The Court extensively detailed the facts underpinning this case in its recent Order granting Plaintiffs' "Motion for Summary Judgment re: Exhaustion of Administrative Remedies" (Dkt. # 43) and "Motion for Partial Summary Judgment re: Clarification of Rights to Benefits and Injunctive Relief under ERISA" (Dkt. # 44).  Order (Dkt. # 77).

In that Order, the Court found as a matter of law that Plaintiffs had exhausted their administrative remedies and that both Defendants' policies and its practices violated Washington's Mental Health Parity Act, RCW 48.46.291.  Id.  The Court awarded Plaintiffs declaratory and injunctive relief, ordering Defendants to immediately cease denying coverage for medically necessary neurodevelopmental therapy to treat insureds with DSM-IV-TR mental health conditions simply because an insured is over six years old.  It also ordered Defendants to immediately cease denying such coverage on the basis of any treatment limitations not generally "imposed on coverage for medical and surgical services," RCW 48.46.291(2)(c)(i).  Id.

## II.  DISCUSSION

"Class certification is governed by Federal Rule of Civil Procedure 23." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011).  Under Rule 23(a), the party seeking certification must demonstrate, first, that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 2

(4) the representative parties will fairly and adequately protect the interests of the class.

Id. "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Id. Plaintiffs contend that certification of their first class is appropriate under Rule 23(b)(1) and (2). They rely on Rule 23(b)(3) to support their second class.

Notably, in resolving Plaintiffs' request, the Court recognizes that "Rule 23 does not set forth a mere pleading standard." Dukes, 131 S. Ct. at 2551. "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Id. (citation omitted) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). Moreover, because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," the required "rigorous analysis" will itself frequently "entail some overlap with the merits of the plaintiff's underlying claim." Id. at 2551–52.

Fortunately, the Court has already resolved many of the factual and legal issues comprising Plaintiffs' claims. See Order (Dkt. # 77). It applies these findings to resolve the certification issues.

**A. First Proposed Class**

Plaintiffs define their first proposed subclass to include:

All individuals who: (1) are, or will be, beneficiaries under an ERISA-governed health plan that has been or will be delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; and (2) require, or are expected to require, neurodevelopmental therapy for the treatment of a qualified mental health condition.

Mot. (Dkt. # 42) at 8–9. They state that the purpose of this class is to pursue "declaratory and injunctive relief" under ERISA § 502(a)(1)(B), (a)(2), and (a)(3). The

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 3

claim is that Defendants may not deny them, insureds with qualifying mental health conditions, coverage for medically necessary neurodevelopmental therapy simply because they are over the age of six.

In response, Defendants argue first that the defined class is overbroad—that it "would include those who have not been harmed by the alleged wrongdoing or may never be so harmed." Opp. (Dkt. # 55) at 9. In short, they argue that the proposed class lacks standing because there is no likelihood that Group Health would deny them coverage in the future. The Court disagrees. For the reasons explained in the Court's prior Order (Dkt. # 77), the Court will not leave beneficiaries at the mercy of Group Health's arbitrary application of its own terms. ERISA requires Group Health to apply its Plan's terms, 29 U.S.C. § 1104(a)(1)(D), and, as Defendants concede, those terms deny non-rehabilitative neurodevelopmental therapy coverage to all beneficiaries over the age of six. Accordingly, each of the proposed class members is at risk of being denied coverage to which they are entitled and presents the ideal case for 29 U.S.C. § 1132(a)(1)(B) relief.

Defendants' remaining contentions are addressed in greater detail below. Ultimately, the Court grants Plaintiffs' request to certify this class.

## 1. Rule 23(a)

The Court finds that the proposed class satisfies each of the Rule 23(a) concerns.

### a. Numerosity

"The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980) (citing cases). All that is required is that the potential class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In general, courts find the requirement satisfied when a class includes at least 40 members.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 4

In the present case, Defendants represent that, as of October 2011, Group Health had nearly 200,000 beneficiaries enrolled in its Plans.  Dkt. # 46 at 18.  Accordingly, relying on statistical data regarding the number of beneficiaries potentially in need of neurodevelopmental therapies, Plaintiffs calculate a proposed class of several thousand individuals.  Id. at 3–4 ¶ 9.  Defendants do not contest this calculation.  Id. at 18; Opp. (Dkt. # 55) at 13–19.  The Court thus concludes that proposed class satisfies the numerosity requirement.

### b.  Commonality

As the Supreme Court recently emphasized in Dukes, "commonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'"  Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (quoting Dukes, 131 S. Ct. at 2551).  "What matters . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Dukes, 131 S. Ct. at 2551 (citation omitted); Mazza, 666 F.3d at 589 ("But commonality only requires a single significant question of law or fact." (citing Dukes, 131 S. Ct. at 2556)).

The proposed class satisfies this standard.  Each of the class members share a common question:  whether Group Health may deny them coverage for neurodevelopmental services strictly on the basis of their age.  More importantly, each is deserving of a common answer:  no, Group Health may not deny them coverage for neurodevelopmental services strictly on the basis of their age.  And, frankly, that answer is dispositive as to the entirety of the request of this proposed class,[1] which seeks

---

[1] Defendants main argument against commonality is that it does not dispose of the crucial question of liability.  Opp. (Dkt. # 55) at 13–14.  To the extent they rely on their inconsistent policies and practices, that contention is utterly unpersuasive for the reasons described at length in the Court's prior Order (Dkt. # 77).  To the extent they assert that individual questions relevant to liability remain, those questions are relevant (if at all) only to

nothing more than an order and judgment precluding Group Health from continuing to apply its age-based limitation to non-rehabilitative neurodevelopmental therapy claims.

### c. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanon, 976 F.2d at 508).  It "'refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'"  Id. (quoting Hanon, 976 F.2d at 508).

Defendants contend that typicality is absent because (1) "issues of fact exist as to whether it would have approved the unsubmitted claims, or would approve medically necessary neurodevelopmental therapies in the future," (2) there exist individual questions of exhaustion, (3) Plaintiffs stand in a different position than other class members in that "Plaintiff T.D. represented [the Technology Access Foundation] in its initial decision to purchase the [Plan] and, until 2004 or 2005, its decision to renew it yearly," and (4) there exist individual questions as to whether individual claims were medically necessary.  Opp. (Dkt. # 55) at 15–18.  The Court finds none of these contentions persuasive.

Again, the Court finds that Group Health's inconsistent adherence to its own policies is not a valid argument or defense.  ERISA requires it to adhere to its policies,

---

the second class, which seeks to hold Defendants liable for past denials.  And arguably, such individual questions are not even relevant as to commonality for that proposed class.  Cf. Mazza, 666 F.3d at 589 ("Even assuming arguendo that we were to agree with Honda's 'crucial question' contention, the individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2).").

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 6

29 U.S.C. § 1104(a)(1)(D), and the Court has found that its policies violate the requirements of Washington's Mental Health Parity Act, RCW 48.46.291.  Order (Dkt. # 77).  Also immaterial is Defendants' contention regarding T.D.'s status.  Even assuming his role in selecting and renewing the Plan would ever be relevant to a claim that Group Health was violating the terms of that Plan (which the Court sincerely doubts), Defendants concede that he no longer holds such authority.  Thus, the Court cannot fathom how T.D.'s past status distinguishes his claim for declaratory and injunctive relief to preclude Group Health from applying its age-based policy in the future from that of any other members of the proposed class.  It is no defense to his claim.

Finally, Defendants' reliance on individual issues is similarly unavailing. Admittedly, these individual issues may be relevant to the second proposed class, which seeks to recover damages for past denials.  Ellis, 657 F.3d at 984–85.  However, they have no bearing as to Plaintiffs' or the potential class members' claims for the declaratory and injunctive relief they all seek.

In addition, the Court has undertaken the required rigorous analysis and finds that typicality has been established.  Both Plaintiffs and the proposed class "members have the same or similar injury"—the likelihood that Group Health's policy would result in the denial of medically necessary neurodevelopmental treatment.  Cf. Ellis, 657 F.3d at 984.  "[T]he action is based on conduct which is not unique to the named plaintiffs"—Group Health's failure to amend its policies (or its practices) to comport with RCW 48.46.291.  Cf. id.  The injuries would be the same—failure to obtain necessary treatments.  Cf. id.  And, there is no "'danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'"  Cf. id. (quoting Hanon, 976 F.2d at 508).  The Court has already found that Plaintiffs are entitled to the very same relief that the proposed class seeks.  Order (Dkt. # 77).

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 7

Typicality has been established as to the first proposed class.

### d. Adequacy of Representation

Finally, the Court reaches the final Rule 23(a) element: adequacy of representation. "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" Ellis, 657 F.3d at 985 (quoting Hanlon, 150 F.3d at 1020). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id.

Defendants' sole complaint as to adequacy rests on their contention that Plaintiffs could have sought "review of a benefits denial by an independent review organization," as permitted by RCW 48.43.535(2). Opp. (Dkt. # 55) at 18–19. They note that Washington law requires such organizations to provide a final decision within 45 days. Id. (citing RCW 48.43.505(1); RCW 48.43.535(7)). And that the law requires carriers to "timely implement the certified independent review organization's determination" and "pay the certified independent review organization's charges." RCW 48.43.535(8). They thus rely on In re Aqua Dots Products Liability Litigation, 654 F.3d 748, 752 (7th Cir. 2011), to contend that Plaintiffs do not have the best interests of the class at heart.

In response, Plaintiffs argue that the specified review process would not be of any benefit to them because the statute only permits review to "'ensure that determinations are consistent with the scope of covered benefits as outlined in the medical coverage agreement,'" and their claim is premised on the fact that the agreement itself contravenes Washington law. Reply (Dkt. # 61) at 10 (quoting RCW 48.43.535(6)). This is a valid contention. While reviewers have limited authority to override a health plan's terms, that authority is limited to the plan's "medical necessity or appropriateness

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 8

standards if the standards are determined upon review to be unreasonable or inconsistent with sound, evidence-based medical practice." RCW 48.43.535(6). Nothing in the statute suggests, much less permits, that reviewers would be expected to review a plan for conformity with state or federal law.

Moreover, the Court notes that In re Aqua Dots is not as supportive of Defendants' position as they suggest. Cf. 654 F.3d at 752. Unlike in that case, Plaintiffs do not "want relief that duplicates a remedy that most buyers already have received, and that remains available to all members of the putative class." Cf. id. Group Health has not offered to change its official policy to reflect the requirements of RCW 48.46.291 as found by this Court. Order (Dkt. # 30); Order (Dkt. # 36). To the contrary, Defendants concede that "Group Health's 'official policy'" remains to terminate "neurodevelopmental therapies at age seven." Opp. (Dkt. # 53) at 16 ("The plain language of the TAF Contract makes this equal treatment clear: the Neurodevelopmental Therapies benefit does not distinguish between types of conditions, but simply grants coverage for neurodevelopmentally disabled children (regardless of whether the neurodevelopmental disability is "mental" or "physical"), subject to common treatment limitations (e.g., no coverage after age six).").

There is also no indication whatsoever in RCW 48.43.535 that the contemplated certified independent review organizations have any authority to award prospective injunctive relief. As stated, their power appears limited to making individual case-by-case determinations within the confines of the relevant plan. RCW 48.43.535(6). Thus, unlike the circumstances in In re Aqua Dots, Plaintiffs do not "propose[] that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer." Cf. 654 F.3d at 752.

In sum, the Court finds both that the "named plaintiffs and their counsel have [no] conflicts of interest with other class members" of the first proposed class and that

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 9

"the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."  See Ellis, 657 F.3d at 985.  Their interests align in every respect, and the proposed class only benefits from the proposed certification.

### 2.  Rule 23(b)

The Court also finds that Plaintiffs' first proposed class satisfies the requirements of both Rule 23(b)(1) and (b)(2).

#### a.  Rule 23(b)(1)

Rule 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> > (1) prosecuting separate actions by or against individual class members would create a risk of:
> >
> > > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> > >
> > > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Fed. R. Civ. P. 23(b)(1).  And as the advisory committee notes state, this subsection is particularly appropriate in cases charging breach of trust by a fiduciary against a large class of fiduciaries.  Fed. R. Civ. P. 23 cmt. to 1966 Amendment, subdivision (b)(1), clause (B).

Nevertheless, Defendants contend that certification under either (b)(1)(A) or (b)(1)(B) is inappropriate both because Plaintiffs seek damages and because individual questions exist as to individual liability.  For reasons previously alluded to, the Court disagrees.  Plaintiffs request that the Court certify two classes is expressly permitted by Federal Rule of Civil Procedure 23(c)(5) ("When appropriate, a class may be divided

into subclasses that are each treated as a class under this rule."). <u>See also</u> <u>Beck v.</u> <u>Boeing Co.</u>, 60 Fed. App'x 38, 39 (9th Cir. 2003) (recognizing that courts may certify multiple classes so long as each class satisfies Rule 23's requirements).  And the first seeks only declaratory and injunctive relief.  It is not concerned with either damages or ultimate entitlement to treatment—either past, present, or future.  The class seeks only an order and judgment that precludes Group Health from imposing its unlawful express Plan limitations when making future benefit determinations.

The Court can envision few better scenarios for certification under (b)(1)(A) or (b)(1)(B).  As a fiduciary, Group Health is bound to follow the terms of the Plan.  29 U.S.C. § 1104(a)(1)(D).  Moreover, ERISA requires that, "where appropriate," plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5).  Thus, were this Court to find that the Plan requires Defendants to act in a certain fashion, ERISA would require Group Health to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario.  And if another court were to interpret the Plan differently, it would trap Defendants "in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another," Opp. (Dkt. # 55) at 21 (citation and internal quotation marks omitted)—a truly unwinnable position that (b)(1)(A) was enacted to remedy. Fed. R. Civ. P. 23 cmt. to 1966 Amendment, subdivision (b)(1), clause (A) ("The matter has been stated thus: 'The felt necessity for a class action is greatest when the courts are called upon to order or sanction the alteration of the status quo in circumstances such that a large number of persons are in a position to call on a single person to alter the status quo, or to complain if it is altered, and the possibility exists that [the] actor might be called upon to act in inconsistent ways.'" (citation omitted)).

In sum, the Court finds that the class is certifiable under either Rule 23(b)(1)(A) or (b)(1)(B).

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 11

**b.  Rule 23(b)(2)**

Alternatively, the Court finds the class certifiable under Rule 23(b)(2).  It

provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> > (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

Fed. R. Civ. P. 23(b)(2).  As the Court explained, "[t]he key to the (b)(2) class is 'the

indivisible nature of the injunctive or declaratory remedy warranted—the notion that the

conduct is such that it can be enjoined or declared unlawful only as to all of the class

members or as to none of them.'"  Dukes, 131 S. Ct. at 2557 (citation omitted).

The present case fits this bill to a "T."  Again, the first proposed class does not

contemplate or require the resolution of individual issues.  It requires only that the Court

determine the requirements of Washington law as applied to the Plan as a whole.

Moreover, given ERISA's requirements, the request is such that Defendants'

conduct—their application of their official written Plan policy—"can be enjoined or

declared unlawful only as to all of the class members or as to none of them."

* * *

In sum, after rigorous inquiry, the Court finds that Plaintiffs have demonstrated

that their first proposed class is appropriate for certification to the extent they seek

"declaratory and injunctive relief" under ERISA § 502(a)(1)(B), (a)(2), and (a)(3).

Moreover, the Court appoints the law firm of Sirianni Youtz Spoonemore as

class counsel.  These lawyers have done significant work "in identifying or investigating

potential claims in the action"; they have significant experience in handling class

actions in this area, Dkt. # 48 at ¶¶ 3–7; they are plainly knowledgeable of the

applicable law, id. at ¶ 2; and, they will commit suitable resources to the case, id. at ¶ 1.

Fed. R. Civ. P. 23(g)(1)(A).  The Court has no doubt that they will "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).

Finally, for all of the reasons described in the Court's prior Order (Dkt. # 77), the Court finds that the first proposed class is entitled to the relief it seeks.  § 1132(a)(1)(B), (a)(3).  As it found in regard to the individual Plaintiffs, id., the Court finds that Defendants' official policy of denying coverage for medically necessary neurodevelopmental therapy to treat insureds with DSM-IV-TR mental health conditions simply because an insured is over the age of six violates the plain requirements of RCW 48.46.291.  It thus ORDERS Defendants to immediately cease denying coverage for medically necessary neurodevelopmental therapy for qualifying mental health conditions on the basis of a claimant's age or any other treatment limitations not generally "imposed on coverage for medical and surgical services." RCW 48.46.291(2)(c)(i).  Pursuant to Rule 23(c)(2)(A), Defendants are ORDERED to notify each of their beneficiaries of this Court's Order.  Defendants are to submit to the Court within 21 days of this Order a copy of their proposed notice for the Court's approval.  Plaintiffs may file a notice setting forth any complaints about the proposed language with the Court within 7 days of Defendants' filing.

**B.  Second Proposed Class**

Next, the Court considers Plaintiffs' request to certify a second class (or subclass) for the purpose of seeking monetary relief under ERISA § 502(a)(1)(B) and (a)(3).  Originally, they defined their proposed class as follows:

> All individuals who:
> (1) are, or have been, beneficiaries under an ERISAgoverned health plan that was delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; and (2) have received or required neurodevelopmental therapy for the treatment of a qualified mental health condition.

Mot. (Dkt. # 42) at 9.  They subsequently revised the proposed class to include only those individuals who:

> (1) are, or have been, beneficiaries under an ERISA-governed health plan that was delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; and (2) when over the age of six, (a) received neurodevelopmental therapy for the treatment of a qualified mental health condition where the cost of such treatment was not reimbursed by Group Health, or (b) required such treatment but did not receive it due to Group Health's exclusion of such therapy.

Reply (Dkt. # 61) at 7.

As a threshold matter, the Court again considers Defendants' contention that the proposed class "would include those who have not been harmed by the alleged wrongdoing or may never be so harmed."  Opp. (Dkt. # 55) at 9.  The Court again disagrees.  Fairly construed, the proposed class is limited to two groups of beneficiaries: one that received treatment and filed a claim but did not receive coverage for the treatment of a qualified mental health condition "due to Group Health's exclusion of such therapy" and one that did not receive necessary treatment for a qualified mental health condition "due to Group Health's exclusion of such therapy."  Reply (Dkt. # 61) at 7.  The Court thinks it plain that both have standing.

Certainly, as alleged, each member of each group suffered the harm of a fiduciary breach—that the Plan was not managed and implemented in a manner that ensured that each received the benefits to which he or she was entitled.  Accordingly, each suffered at least some monetary detriment related to the devaluation of the Plan's worth to them as a result of Defendants' alleged miscues.  Moreover, each also suffered additional individual harms.  The first group was forced to pay for treatment out of pocket that should have been covered.  And the second was precluded from even obtaining treatment as a result of Defendants' actions.  Nothing more is needed.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

The Court thus moves to the requirements of Rule 23.

**1. Rule 23(a)**

The Court finds that the second proposed class satisfies each of the four Rule 23(a) concerns.

### a. Numerosity

Again, Defendants do not contest that the proposed subclass remains numerous enough "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Accordingly, for the reasons set forth previously, the Court finds that the proposed class satisfies the numerosity requirement.

### b. Commonality

Even understanding that the proposed subclass is narrower to some degree, the Court also finds that commonality is still demonstrated. Class proceedings will still generate at least "a single significant question of law or fact," Mazza, 666 F.3d at 589, "apt to drive the resolution of the litigation": namely, whether Group Health violated the RCW 48.46.291 by denying claims based on claimants' ages. Dukes, 131 S. Ct. at 2551 (citation omitted); cf. Opp. (Dkt. # 53) at 17 (asserting that Group Health altered its practices beginning in January 2011). Nothing more is required. See Mazza, 666 F.3d at 589 ("Even assuming arguendo that we were to agree with Honda's 'crucial question' contention, the individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2).").

### c. Typicality

In its previous discussion of the typicality requirement, the Court dismissed out of hand Defendants' contention that typicality was not demonstrated because (1) "issues of fact exist as to whether it would have approved the unsubmitted claims, or would approve medically necessary neurodevelopmental therapies in the future," and (3) Plaintiffs stand in a different position than other class members in that "Plaintiff T.D.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 15

represented [the Technology Access Foundation] in its initial decision to purchase the [Plan] and, until 2004 or 2005, its decision to renew it yearly."  Opp. (Dkt. # 55) at 15–18.  For the reasons stated, the Court remains convinced that neither of those contentions has any merit.

Defendants remaining contentions—that there exist individual questions of exhaustion and medical necessity, see id.—have greater merit, however.  Unlike with the previous class, Plaintiffs now seek to recover monetary damages based on allegedly unlawful treatment denials.  Accordingly, whether individual class members exhausted their claims or would otherwise have been entitled to the treatment they requested even if not for Group Health's age-based limitation raise valid individual questions.  Still, the Court recognizes that "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  Ellis, 657 F.3d at 984 (quoting Hanon, 976 F.2d at 508 (internal citation and quotation marks omitted)).  The concern is simply whether "'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'"  Id. (quoting Hanon, 976 F.2d at 508).  To overcome this concern and "demonstrate typicality, Plaintiffs must [simply] show that the named parties' claims are typical of the class."  Id.

The Court finds that Plaintiffs have met this burden.  Importantly, while there may in fact be individual questions, that is not enough to overcome certification.  See Walters v. Reno, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification.  What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice."); Dukes, 131 S. Ct. at 2551 n.5 ("We have previously stated in this context that '[t]he commonality and typicality requirements of

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 16

Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157–158 n.13 (1982))).  The named Plaintiffs share each of these concerns with the remainder of the proposed class.  There is therefore every reason to believe that the class's interests would "be fairly and adequately protected in their absence."  See Dukes, 131 S. Ct. at 2551 n.5 (citation omitted).

### d. Adequacy of Representation

Finally, the Court reaches for a second time the final Rule 23(a) element: adequacy of representation.  For the reasons previously described, it finds that the named Plaintiffs would adequately represent the class's interests.  Moreover, the Court notes that any class members who wish to opt-out of the proposed class proceedings to take advantage of the independent review process permitted by RCW 48.43.535(2) will be free to do so.  See Fed. R. Civ. P. 23(c)(2)(B)(v).  Accordingly, there remains no concern that class members will be forced to incur "high transaction costs (notice and attorneys' fees)" to obtain a remedy already available to them at no expense.  Cf. In re Aqua Dots, 654 F.3d at 752.

### 2. Rule 23(b)(3)

The Court next considers whether Plaintiffs' second proposed class meets the requirements of Rule 23(b)(3).  It finds that it does not.

Rule 23(b)(3) allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 17

methods for fairly and efficiently adjudicating the controversy."  The Rule sets forth four considerations to guide this inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Importantly, the Ninth Circuit has held that "'there is clear justification for handling the dispute on a representative rather than an individual basis' if 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . .'"  Mazza, 666 F.3d at 588 (quoting Hanlon, 150 F.3d at 1022).

In the present case, the Court finds that common questions predominate.  Again, each of the proposed class members' claims depends on a single basic common question:  whether Group Health violated RCW 48.46.291 by employing beneficiaries' ages as a coverage limitation for neurodevelopmental services.  More importantly, each appears deserving of a common answer:  yes, Group Health did violate RCW 48.46.291 by employing beneficiaries' ages as a coverage limitation for neurodevelopmental services.  Admittedly, though, the common waters begin to muddy at that point:  For Group Health to be liable for damages, Plaintiffs would need to further show that individual class members exhausted their remedies, brought a claim within a year, and would otherwise have been eligible for coverage.  See Opp. (Dkt. # 55) at 15–18.  And, as Defendants contend these issues appear to be quite individual.

Fortunately, Plaintiffs add some much need clarity by pointing out that these concerns can be addressed on a class-wide basis.  They argue that Defendants' official

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 18

policy would have rendered administrative remedies entirely moot as to any effected

beneficiary, Mot. (Dkt. # 43) at 20–28, and that Defendants should not be permitted to

impose Group Health's one-year claim period bar against class members on account of

their violations, Reply (Dkt. # 62) at 11–14 (citing CIGNA Corp. v. Amara, 131 S. Ct.

1866 (2011)).  The Court agrees that there appear to be common answers to these

common questions and that there is therefore no reason not to resolve each issue in a

single adjudication rather than on an individual basis.  Cf. Mazza, 666 F.3d at 588.

      Of course, the same cannot be said for the third concern.  As Defendants contend,

Opp. (Dkt. # 55) at 15–18, and as Plaintiffs concede, see Reply (Dkt. # 61) at 14–16, the

individual questions of "medical necessity" are not susceptible to common resolution.

Rather, Plaintiffs suggest a method for resolving those question that would minimize the

need for individual judicial determinations:

> **Step 1:**  If the court invalidates Group Health's exclusion, then (a)
> Group Health should be required to reprocess all of the claims
> it previously denied due to age and (b) should be required to
> process new claims that were not submitted due to its
> exclusion.
>
> **Step 2:**  If Group Health denies any of the claims processed under
> Step 1, then the claim should be sent to an [independent
> review organization] for review.
>
> **Step 3:**  The ERISA damages related to benefits claims will equal
> the amount approved by Group Health in step 1 plus the
> amount approved by the [independent review organization] in
> step 2.

Reply (Dkt. # 61) at 16.

      Frankly, the scope of this remedy is worrisome.  It suggests to the Court that

while individual issues may not predominate, those that exist are sufficiently distinct

and pronounced that a class action may not be "superior to other available methods for

fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  For one,

the independent review process cannot be instituted at the urging of either Group Health

or the Court.  RCW 48.43.535(2).  Only an "enrollee may seek review by a certified

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 19

independent review organization of a carrier's decision to deny, modify, reduce, or terminate coverage of or payment for a health care service." <u>Id.</u>  Thus, to employ Plaintiffs' own workaround, the Court would need to compel individual class members to submit claims to these organizations, with all of the accompanying inconvenience that would entail.  <u>See</u> RCW 48.43.535(5).  This suggests to the Court that "the likely difficulties in managing [the] class action" would appear to be quite severe.  <u>See</u> Fed. R. Civ. P. 23(b)(3)(D).

Moreover, because Group Health would be bound by the result of such review in any case, RCW 48.43.535(7), it does not appear that the class framework adds anything to the process.  The Court sees no reason why the class should not simply be certified under Rule 23(b)(1) or (b)(2) for the purpose of obtaining declaratory relief as to the scope of Group Health's obligations under the Plan, <u>as amended to comport with RCW 48.46.291</u>.  And then, Court order in hand, those beneficiaries who believe themselves aggrieved could pursue that relief that best addresses their independent needs.  Certainly, the large sums at stake, and the availability of statutory attorney's fees, 29 U.S.C. § 1132(g), suggests that class members would have a significant interest "in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), especially if apprised as part of some declaratory relief of a fiduciary violation on the part of Group Health.

In fact, of the four considerations, only one would seem to weigh in favor of class treatment:  "the extent and nature of any litigation concerning the controversy already begun by or against class members."  Fed. R. Civ. P. 23(b)(3)(B).  But even this factor barely tips the scale.  Assuming that the Court resolves the common threshold issues via a declaratory order, the only questions that remain would be unique to individual beneficiaries and thus a poor reason to certify the class.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 20

In sum, the Court finds that, as defined, the second proposed class would not be "superior to other available methods for fairly and efficiently adjudicating the controversy," given the difficulty in ascertaining which class members would otherwise have been entitled to treatment if not for the age limitation. Perhaps Plaintiffs can suggest an alternative class definition that addresses the identified issues, e.g., a class comprised solely of those individuals actually denied coverage solely on the basis of their age. Or perhaps Plaintiffs will simply seek to certify a class that seeks declaratory relief as to the identified issues. That remains to be seen. The Court simply finds that the proposed class is deficient.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART Plaintiffs' "Plaintiffs' Motion for Class Certification" (Dkt. # 42).

It certifies as a class for the purpose of seeking "declaratory and injunctive relief" under ERISA § 502(a)(1)(B), (a)(2), and (a)(3):

> All individuals who:
> (1) are, or will be, beneficiaries under an ERISA-governed health plan that has been or will delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; and (2) require, or are expected to require, neurodevelopmental therapy for the treatment of a qualified mental health condition.

Mot. (Dkt. # 42) at 8–9. The class claim is that Defendants may not deny them, insureds with qualifying mental health conditions, coverage for medically necessary non-rehabilitative neurodevelopmental therapy simply because they are over the age of six. And the Court appoints the law firm of Sirianni Youtz Spoonemore as class counsel.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 21

Moreover, for all of the reasons described in the Court's prior Order (Dkt. # 77), the Court finds that this class is entitled to the relief it seeks.[2]  Defendants' official policy of denying coverage for medically necessary, non-rehabilitative neurodevelopmental therapy for insureds with DSM-IV-TR mental health conditions simply because an insured is over the age of six violates the plain requirements of RCW 48.46.291.  Accordingly, the Court ORDERS Defendants to immediately cease denying coverage for medically necessary neurodevelopmental therapy for qualifying mental health conditions on the basis of a claimant's age or any other treatment limitations not generally "imposed on coverage for medical and surgical services."  RCW 48.46.291(2)(c)(i).  The Court FURTHER ORDERS Defendants to notify their beneficiaries of the Court's finding as discussed herein.

DATED this 1st day of June, 2012.

*MNR S Lasnik*
Robert S. Lasnik
United States District Judge

---

[2]  The Court notes that Plaintiffs' motion for summary judgment was brought on behalf of both the individual Plaintiffs and the proposed class.  See Mot. (Dkt. # 44) at 7 ("In order to require Group Health to immediately change its policy of exclusion, plaintiff Z.D., and a class seeking prospective relief, if certified, seek remedies under ERISA to immediately force Group Health to change both its policy and practice.").  Procedurally speaking, it is therefore appropriate to award summary judgment to the class.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 22