1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

Z.D., by and through her parents and
guardians, J.D. and T.D., individually, on
behalf of THE TECHNOLOGY ACCESS
FOUNDATION HEALTH BENEFIT
PLAN, and on behalf of similarly situated
individuals,

No.  C11-1119RSL

13

14

ORDER GRANTING IN PART
PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

15

Plaintiffs,

16

v.

17

GROUP HEALTH COOPERATIVE, *et.
al.*,

18

Defendants.

19

20

        This matter comes before the Court on Plaintiffs' "Motion to Certify Surcharge

21

Class and Motion for Partial Summary Judgment re: Availability of Equitable Remedies

22

under ERISA § 502(a)(3)" (Dkt. # 89), Plaintiffs' "Motion to Certify Incurred Claims

23

Subclass and Motion for Declaratory Relief re: Time Limitations for Submitting

24

Claims" (Dkt. # 90), and Plaintiffs' "Motion to Appoint Special Master or Provide

25

Notice of Rights" (Dkt. # 91).

26

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS
FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT - 1

For the reasons set forth below, the Court GRANTS Plaintiffs' motions IN PART.  It GRANTS Plaintiffs' motion to certify an incurred claims subclass IN PART, finding that they are entitled to the declaratory and injunctive relief they seek.  It DENIES Plaintiffs' motion to certify their proposed surcharge subclass.[1]

## I. BACKGROUND

The Court extensively detailed the facts underpinning this case in its Order granting Plaintiffs' "Motion for Summary Judgment re: Exhaustion of Administrative Remedies" (Dkt. # 43) and "Motion for Partial Summary Judgment re: Clarification of Rights to Benefits and Injunctive Relief under ERISA" (Dkt. # 44).  Order (Dkt. # 77).  It incorporates that discussion herein by reference.  Since that Order, the Court has issued two rulings of particular relevance to the present motion:

First, the Court granted Plaintiffs' motion to certify a class of "[a]ll individuals who . . . (1) are, or will be, beneficiaries under an ERISA-governed health plan that has been or will be delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; and (2) require, or are expected to require, neurodevelopmental therapy for the treatment of a qualified mental health condition" for the purpose of seeking "declaratory and injunctive relief" under ERISA § 502(a)(1)(B), (a)(2), and (a)(3).  Order (Dkt. # 78).  And finding that the class was entitled to the relief sought, the Court ordered Defendants to immediately cease denying coverage for medically necessary neurodevelopmental therapy for qualifying mental health conditions on the basis of a claimant's age or any other treatment limitations not generally "imposed on coverage for medical and surgical services," RCW 48.46.291(2)(c)(i), and to immediately notify their beneficiaries of the Court's ruling.  Dkt. # 78 at 21–22.

---

[1]  The Court commends each counsel for their briefing on this matter.  It is concise, well-written, and persuasive.  The Court also thanks counsel for focusing on issues not previously resolved and notes for the record that Defendants have preserved their previously raised positions for sake of appeal.

Second, the Court denied Plaintiffs' request to certify a second class on behalf of past and existing beneficiaries for the purpose of seeking monetary relief under ERISA § 502(a)(1)(B) and (a)(3). E.g., id. at 21. In reaching that conclusion, the Court found that the proposed class satisfied the requirements of Federal Rule of Civil Procedure 23(a), but that Plaintiffs had failed to demonstrate that "the second proposed class would . . . be 'superior to other available methods for fairly and efficiently adjudicating the controversy'" as required by Federal Rule of Civil Procedure 23(b)(3). Id.

## II. DISCUSSION

The present motions can be succinctly described as a second good faith bite at the class certification apple. In short, Plaintiffs have reworked their second proposed class in an attempt to remedy the deficiencies identified by the Court in its prior Order (Dkt. # 78) and now ask the Court to consider again whether class treatment is appropriate.

The crux of Plaintiffs' renewed request is their proposal to divide their previously proposed class into two subclasses. They define the first, which they refer to as the "Incurred Claims" subclass, to include:

> All individuals who (1) are, or have been, beneficiaries under an ERISA-governed health plan that was delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; and (2) received, when over the age of six, neurodevelopmental therapy for the treatment of a qualified mental health condition where the cost of such treatment was not reimbursed by Group Health.

Dkt. # 90 at 8. And they define the second, termed the "Surcharge" subclass, to include:

> All individuals who (1) are, or have been, beneficiaries under an ERISA-governed health plan that was delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; and (2) required, when over the age of six, neurodevelopmental therapy for the treatment of a qualified mental health condition but did not receive such care due to Group Health's exclusion, or announced exclusion, of such care.

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS
FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT - 3

Dkt. # 89 at 7.[2]

And based on the expectation that the Court will certify each of their proposed classes, Plaintiffs move for summary judgment on issues pertinent to each subclass. Finally, they ask the Court to appoint a special master to adjudicate individual issues of liability. Dkt. # 91. The Court considers the merits of each proposed class, along with each's attendant summary judgment and special master issues, in turn.

## 1. The Incurred Claims Subclass

The stated purpose of Plaintiffs' proposed incurred claims subclass is relatively straightforward: First, Plaintiffs and the proposed subclass "seek a declaration that Group Health may not impose its one-year claims submission limitation period, or allege a failure to exhaust, on any neurodevelopmental therapy claim for a qualified mental health condition incurred under an ERISA group health benefit plan since January 1, 2006, and under any ERISA small group health benefit plan since January 1, 2008." Dkt. # 90 at 9. Second, they "seek an injunction requiring Group Health to (1) reprocess any claim previously submitted for coverage of neurodevelopmental therapies but denied due to an age limitation, and (2) inform all beneficiaries during the class

---

[2] Plaintiffs apply the following additional definitions to each subclass:

(1) the term "Group Health" shall mean (a) Group Health Cooperative; (b) any affiliate of defendant; (c) predecessors or successors in interest of any of the foregoing; and (d) all subsidiaries, such as Group Health Options Inc., or parent entities of any of the foregoing; and

(2) the term "qualified mental health condition" shall mean a condition listed in the DSM-IV-TR other than (a) substance related disorders and (b) life transition problems, currently referred to as "V" codes, and diagnostic codes 302 through 302.9 as found in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, published by the American Psychiatric Association, where the service received, required, or expected to be required is not properly classified as skilled nursing facility services, home health care, residential treatment, custodial care or non-medically necessary court-ordered treatment.

Dkt. # 89 at 7; Dkt. # 90 at 8–9.

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS
FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT - 4

period that they have the right to submit additional claims, notwithstanding the time bar in their contracts, and of the precise process under which such submissions may occur." Id.   With this aim in mind, the Court turns first to the merits of their request for class certification.  It then considers whether they are entitled to any of the relief they seek.

### A. Class Certification

As the Court explained in its prior Order (Dkt. # 78), "[c]lass certification is governed by Federal Rule of Civil Procedure 23."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011).  Under Rule 23(a), the party seeking certification must demonstrate, first, that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Id.  "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  Id.  Plaintiffs rely predominately on Rule 23(b)(2) to justify certification of their incurred claims subclass.

Notably, in resolving Plaintiffs' request, the Court continues to recognize that "Rule 23 does not set forth a mere pleading standard."  Dukes, 131 S. Ct. at 2551. "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  Id. (citation omitted) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").  Moreover, because "class

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS
FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT - 5

determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," the required "rigorous analysis" will itself frequently "entail some overlap with the merits of the plaintiff's underlying claim." Id. at 2551–52.  Fortunately, the Court has already resolved many of the factual and legal issues comprising Plaintiffs' claims.  See Dkt. # 77.  Namely, the Court has already ruled that "Defendants' official policy of denying coverage for medically necessary neurodevelopmental therapy to treat insureds with DSM-IV-TR mental health conditions simply because an insured is over the age of six violates the plain requirements of RCW 48.46.291."  Dkt. # 78 at 13 (citing Dkt. # 77).  And as Defendants recognize, the Court has also already ruled on most of the objections they would otherwise assert here in opposition to Plaintiffs' incurred claims class certification motion.  Dkt. # 100 ("Group Health recognizes from the Court's prior order that it will certify the incurred claims and surcharge subclasses under Rule 23(b)(2). See Dkt. 78 at 20-21.  While Group Health respectfully disagrees and preserves its arguments for appeal, Group Health does not reiterate its arguments against certification here.").  Like Defendants, the Court sees no reason to rehash those arguments here. Rather, noting Defendants' reservation of its prior objections, the Court incorporates by reference its prior resolution of those points, e.g., Dkt. # 78, and merely supplements them as follows.

### i.  Rule 23(a)

The Court finds that the proposed incurred claims subclass satisfies each of the Rule 23(a) concerns.

### a.  Numerosity

Plaintiffs represent to the Court that the proposed subclass is expected to "number in the hundreds."  Dkt. # 90 at 10 (citing Dkt. # 92 at ¶ 6).  Defendants do not dispute this figure and do not contest that the proposed subclass "meet[s] Rule 23(a)'s

numerosity requirement."  The Court finds the potential class to be "so numerous that joinder of all members [would be] impracticable."  See Fed. R. Civ. P. 23(a)(1); Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980) (citing cases); cf. Rannis v. Recchia, 380 F. App'x 646, 651 (9th Cir. 2010) (noting that, "[i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members").

### b. Commonality

The Court also finds that commonality has been demonstrated.  Class proceedings will generate at least "a single significant question of law or fact," Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012)—namely, whether Defendants' official policy of limiting coverage for medically necessary neurodevelopmental services on the basis of beneficiaries' ages amounted to a breach of their fiduciary duties.  And, more importantly, it will generate a common answer "apt to drive the resolution of the litigation," Dukes, 131 S. Ct. at 2551 (citation omitted):  yes, Defendants' policy and practice did amount to a fiduciary breach.  Dkt. # 78 at 13 ("[T]he Court finds that Defendants' official policy of denying coverage for medically necessary neurodevelopmental therapy to treat insureds with DSM-IV-TR mental health conditions simply because an insured is over the age of six violates the plain requirements of RCW 48.46.291.").  Nothing more is required.  See Mazza, 666 F.3d at 589 ("But commonality only requires a single significant question of law or fact." (citing Dukes, 131 S. Ct. at 2556)).

### c. Typicality

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  It "'refers to the nature of the

claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" Id. (same).  The concern is whether "'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" Id. (same).

The Court finds no reason to doubt that both Plaintiffs' claims and the potential defenses to those claims are typical of the class.  As stated above, the claim is one and the same:  the contention that Defendants' official policy during the time period in question violated RCW 48.46.291 and that Defendants therefore violated their fiduciary duties to Plaintiffs and the rest of the proposed class by limiting coverage for medically necessary neurodevelopmental services on the basis of beneficiaries' ages.  And Plaintiffs share the proposed subclass's interest in the Court's resolution of the "two overriding common questions" that form the basis of their request for declaratory relief: (1) whether "it [would] have been futile for an Incurred Claims Subclass member to appeal a denial of coverage due to age" and (2) whether Defendants should "be required [to] process claims for neurodevelopmental therapy [that had never before been submitted] notwithstanding the one-year time limitations in [Group Health's] contracts." Compare Dkt. # 90 at 9 (stating the purpose of the proposed incurred claims subclass), with, e.g., Dkt. # 62 at 20–28 (arguing that the Court should excuse any failure to exhaust on futility grounds given Defendants' official position), and Dkt. # 45 at ¶ 7 (noting at least one occasion on which Plaintiffs paid for treatment themselves without submitting their claim to Defendants).

### d.  Adequacy of Representation

Finally, the Court reaches the final Rule 23(a) element:  adequacy of representation.  It notes the predominant concerns of the inquiry:  (1) whether "'the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS
FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT - 8

vigorously on behalf of the class?'" Ellis, 657 F.3d at 985 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).  It finds neither to be an issue.

Notably, in their prior opposition to class certification, Defendants raised only a single complaint as to the adequacy of Plaintiffs and Plaintiffs' counsel to represent the proposed class—that "Plaintiffs' decision to pursue their claims through time-consuming, expensive, and public litigation, rather than through the fast, free, and confidential independent review process raises questions [about] whether Plaintiffs' interests align with those of other proposed class members."  Dkt. # 55 at 18–19; see Dkt. # 100 at 10 (noting that it would not revisit certification issues other than to note that its wishes to preserve its prior arguments for appeal).  As outlined in its prior Order, the Court disagreed with that position for several reasons. Dkt. # 78 at 8–10.  Many of those reasons still apply, but the Court also notes that Defendants' position is itself mitigated by the fact that Plaintiffs now seek declaratory and injunctive relief so that class members can utilize the very independent review process Defendants suggest.  As Plaintiffs explain in their motion:

> The relief sought here is purely injunctive and declarative.  It would not result in a money judgment.  Rather, it would open the door for Subclass members to have their claims processed by Group Health without the imposition of the age limitation or futility defense.  If Group Health denied those claims for another reason, then individual class members could, at their option:
> (1) do nothing;
> (2) seek review by an [independent review organization]; and/or
> (3) individually challenge the denial under ERISA.

Dkt. # 90.  Accordingly, the Court again finds that the "named plaintiffs and their counsel have [no] conflicts of interest with other class members" and that they will "prosecute the action vigorously on behalf of the class."  See Ellis, 657 F.3d at 985.

### ii.  Rule 23(b)

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS
FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT - 9

The Court also finds that Plaintiffs' proposed incurred claims subclass, as modified by the Court, satisfies the requirements of Rule 23(b)(2).[3]

"Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" Dukes, 131 S. Ct. at 2557. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Id. (citation omitted). Therein lies the problem for Plaintiffs.

Plaintiffs' proposed subclass of "[a]ll individuals who . . . received, when over the age of six, neurodevelopmental therapy for the treatment of a [medically necessary] qualified mental health condition where the cost of such treatment was not reimbursed by Group Health" appears to the Court to include three different groups of beneficiaries: (1) those who filed claims, were denied, and exhausted their administrative remedies, (2) those that filed claims, were denied, but never further exhausted their administrative remedies, and (3) those that never filed claims. And each of these subgroups actually requires differing levels of declaratory relief. For example, the "nature of the injunctive or declaratory remedy warranted" for subgroup (1) is more limited than that required for subgroup (2) and (3). Subgroup (1) requires only that the Court declare Defendants' post-January 1, 2006 policy and practice of denying coverage for medically necessary neurodevelopmental therapy for insureds with DSM-IV-TR mental health conditions because he or she was over the age of six to be violative of the plain requirements of RCW 48.46.291—and thus a fiduciary breach—before awarding it that relief that is in fact common to all subgroups:  equitable reformation of the contract to reflect the

---

[3]  The Court declines to certify under Rule 23(b)(3) for the reasons set forth in its prior order.  Dkt # 78.

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS
FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT - 10

requirements of RCW 48.46.291 and an injunctive order requiring Defendants to notify

their beneficiaries of their breach and of each beneficiary's ability to resubmit his or her

claims.  See Dkt. # 107 at 2–3 (describing the relief sought).  Unlike subgroup (2),

subgroup (1) has no need for a finding of futility.  And, unlike subgroup (3), it has no

need for declaratory relief regarding the one-year time limitation on submitting an initial

claim.  See Dkt. # 54 at 19–20 ("The 2008 TAF contract explicitly provides that "[i]n no

event . . . shall a claim be accepted later than (1) year from the date of service.").  In

short, it appears the remedy necessary to make each beneficiary whole varies to some

degree depending on the actions of that proposed subclass member.

Accordingly, to remain in technical compliance with Rule 23(b)(2), the Court,

after rigorous inquiry, certifies three distinct incurred claims subclasses for the purpose

of seeking declaratory and injunctive relief under ERISA § 502(a)(1)(B), (a)(2), and

(a)(3).  It defines the first, which it terms the "Exhausted Incurred Claims Subclass" to

include:

> All individuals who (1) are, or have been, beneficiaries under
> an ERISA-governed health plan that was delivered, issued for
> delivery, or renewed on or after January 1, 2006, by Group Health;
> (2) received, when over the age of six, neurodevelopmental therapy
> for the treatment of a medically necessary[4] qualified mental health
> condition where the cost of such treatment was not reimbursed by
> Group Health; (3) submitted their claim to Group Health; and (4)
> exhausted their administrative remedies.[5]

The purpose of this subclass is (1) to seek a declaration that "[s]ince January 1, 2006,

Group Health breached its fiduciary duties when it failed to abide by the requirements

of the Mental Health Parity Act and excluded coverage of [medically necessary]

neurodevelopmental therapies to persons age seven and older with covered DSM-IV

---

[4]  The Court adds "medically necessary" at Defendants' request.  Dkt. # 100 at 14.

[5]  The Court also incorporates the additional definitions noted supra at note 2.

conditions" and (2) that "[a]lso since January 1, 2006, Group Health breached its

fiduciary duties by providing erroneous coverage information and misleading its

participants and beneficiaries to believe that they had no coverage [for medically

necessary] neurodevelopmental therapies to treat DSM-IV conditions upon reaching age

seven"; (3) to ask the Court to exercise its § 502(a)(3) equitable power as described by

the Supreme Court in CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1879–80 (2011) (noting

that a court may reform the terms of an ERISA plan, pursuant to ERISA § 503(a)(3), to

remedy "false or misleading information" provided by a plan fiduciary), to reform the

terms of Defendants' contracts; and (4) to order Defendants to "inform class members

about the removal of the illegal exclusion from contracts in effect from January 1,

2006[,] to the present" and (5) "to process all claims incurred in the past, without

application of the illegal exclusion."  See Dkt. # 107 at 2–3.

The Court defines the second subclass, which it terms the "Submitted but

Unexhausted Incurred Claims Subclass" to include:

> All individuals who (1) are, or have been, beneficiaries under
> an ERISA-governed health plan that was delivered, issued for
> delivery, or renewed on or after January 1, 2006, by Group Health;
> (2) received, when over the age of six, neurodevelopmental therapy
> for the treatment of a medically necessary qualified mental health
> condition where the cost of such treatment was not reimbursed by
> Group Health; (3) submitted their claim to Group Health; but (4)
> failed to exhaust their administrative remedies.

Its purpose is identical to that of the "Exhausted Incurred Claims Subclass," except that

it also seeks a classwide declaration that, "[b]ecause of Group Health's breaches of

fiduciary duty, any exhaustion of administrative remedies related to the age limit

imposed on neurodevelopmental therapy coverage w[ould have been] futile."  Id.

Finally, the Court defines a third "Unsubmitted and Unexhausted Incurred

Claims Subclass" to include:

> All individuals who (1) are, or have been, beneficiaries under an ERISA-governed health plan that was delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; (2) received, when over the age of six, neurodevelopmental therapy for the treatment of a medically necessary qualified mental health condition where the cost of such treatment was not reimbursed by Group Health; and (3) failed to submit their claims to Group Health or otherwise exhaust their administrative remedies.

For obvious reasons, the purpose of this subclass is identical to that of the "Unexhausted Incurred Claims Subclass," except that it also seeks a class-wide declaration that Group Health process past claims "without application of . . . the one-year time limit on submission of claims." Id.

* * *

In sum then, after rigorous inquiry, the Court certifies the three incurred claims subclasses discussed above for the purposes identified.[6]  Furthermore, the Court appoints the law firm of Sirianni Youtz Spoonemore as counsel for each.  These lawyers have done significant work "in identifying or investigating potential claims in the action"; they have significant experience in handling class actions in this area, Dkt. # 48 at ¶¶ 3–7; they are plainly knowledgeable of the applicable law, id. at ¶ 2; and, they will commit suitable resources to the case, id. at ¶ 1.  Fed. R. Civ. P. 23(g)(1)(A).  The Court has no doubt that they will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

## B.  Entitlement to Relief

---

[6]  The Court notes that this delineation further bolsters the commonality and typicality prongs of the Court's Rule 23(a) inquiry.  The claims of each subclass member are now wholly identical.  Moreover, the Court notes that Plaintiffs have presented evidence of claims never submitted, claims submitted but, as Defendants contend, never exhausted, and claims that were plainly exhausted.  Accordingly, they can serve as the class representative of each subclass.

Having certified the three subclasses, the Court moves to the merits of each's requests for relief.  The Court starts with the requests of the "Exhausted Incurred Claims Subclass," which, as noted, are common to all three incurred claims subclasses.  It then considers Plaintiffs' futility contention and their contention that Group Health should be precluded from relying on their "one-year time limit" to deny claims.

### i. The Common Claims

#### 1. Declaratory Judgment re: Breach of RCW 48.46.291

The Court starts with each subclass's common request that the Court find that "[s]ince January 1, 2006, Group Health breached its fiduciary duties when it failed to abide by the requirements of the Mental Health Parity Act and excluded coverage of [medically necessary] neurodevelopmental therapies to persons age seven and older with covered DSM-IV conditions."  The Court GRANTS that relief.

As explained in prior Orders, an "ERISA plan is . . . bound by state insurance regulations insofar as they apply to the plan's insurer."  Dkt. # 30 at 6 (quoting FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990)).  And the Court has found that the baseline requirement of Washington's Mental Health Parity Act is clear:  "All health benefit plans offered by health maintenance organizations that provide coverage for medical and surgical services shall provide . . . coverage for . . . Mental health services."  RCW 48.46.291(2)(a)(i), (b)(i), (c)(i); see Dkt. # 77 at 21–22.[7]  Moreover, the Court notes that there is no genuine dispute that Defendants' official policy and practice prior to the instigation of this litigation has been to deny coverage for medically necessary neurodevelopmental therapy for insureds with DSM-IV-TR mental health conditions

---

[7]  The Court thinks it important to note that Defendants' reliance on its interpretation of RCW 48.46.291(2)(c)(4), which governs "group health benefit plans for groups other than small groups, as defined in RCW 48.43.005 delivered, issued for delivery, or renewed on or after July 1, 2010," has no bearing as to claims raised under pre-Ju1y 1, 2010 plans.  See Dkt. # 77 at 22 (noting the history and purpose of the Act).  Compare RCW 48.46.291(2)(a), and RCW 48.46.291(2)(b), with RCW 48.46.291(2)(c)(4).

simply because they are over the age of six.  Dkt. # 78 at 24 ("In sum, the Court finds
. . . that neither Group Health's policies nor its practices adhere to the statute's mandates
. . . .").  Accordingly, the Court finds that Plaintiffs and each of their incurred claims
subclasses are entitled to the declaratory relief they seek.  The Court enters partial
judgment in their favor, declaring that, since January 1, 2006, Group Health breached its
fiduciary duties when it failed to abide by the requirements of the Mental Health Parity
Act and excluded coverage for medically necessary neurodevelopmental therapies to
persons age seven and older with covered DSM-IV conditions.  See Dkt. # 107 at 2.

### 2. Declaratory Judgment re: Erroneous Coverage Information

The Court next considers each subclass's request that the Court enter a
declaratory judgment that, "[a]lso since January 1, 2006, Group Health breached its
fiduciary duties by providing erroneous coverage information and misleading its
participants and beneficiaries to believe that they had no coverage [for medically
necessary] neurodevelopmental therapies to treat DSM-IV conditions upon reaching age
seven."  Dkt. # 107 at 2.  The Court again finds such relief to be warranted.

It is settled law that "[a] fiduciary has an obligation to convey complete and
accurate information material to the beneficiary's circumstance" and that "fiduciaries
breach their duties if they mislead plan participants."  Barker v. Am. Mobil Power
Corp., 64 F.3d 1397, 1403 (9th Cir. 1995).  And Defendants cannot contest that the
literal terms of their contracts precluded the very coverage that Washington law
required.  See Dkt. # 8 at 37 (Exhibit A, Group Health Medical Coverage Agreement);
see also Dkt. # 90 at 22.  As a result, the Court again finds that they breached their
fiduciary obligations.  It directs the Clerk to enter partial judgment in their favor on the
terms requested.

### 3. Reformation of the Plan Terms

1    Next, the Court considers each subclass's request that it exercise its § 502(a)(3)

2    equitable power to reform the terms of Defendants' plans to remedy the "false or

3    misleading information" provided by Defendants.  The Court GRANTS the request.

4    The Supreme Court's example in <u>CIGNA</u> is directly on point.  In that case, the

5    Court considered whether a district court overstepped its power when it ordered the

6    following relief:  "Step 1:  It ordered the terms of the [ERISA] plan reformed (so that

7    they provided an "A plus B," rather than a "greater of A or B" guarantee).  Step 2:  It

8    ordered the plan administrator (which it found to be CIGNA) to enforce the plan as

9    reformed."  131 S. Ct. at 1876.  The Court found "step 2" to be "consistent with

10   § 502(a)(1)(B), for that provision grants a participant the right to bring a civil action to

11   "recover benefits due . . . under the terms of his plan."  <u>Id.</u>  However, the Court found

12   that the district court had erred in concluding that § 502(a)(1)(B) likewise authorized

13   "step 1."  <u>Id.</u> at 1877.  Instead, the Court found that the "District Court's affirmative and

14   negative injunctions," specifically its "reformation of the terms of the plan, in order to

15   remedy the false or misleading information CIGNA provided," was "other <u>appropriate</u>

16   <u>equitable relief</u>" authorized by § 502(a)(3).  <u>Id.</u> at 1878–79 (emphasis in original).  As it

17   explained, "[t]he power to reform contracts (as contrasted with the power to enforce

18   contracts as written) is a traditional power of an equity court, not a court of law, and was

     used to prevent fraud."  <u>Id.</u>

19   The Court finds it appropriate to exercise that power in this case.  Again, the

20   Court has already found that Defendants breached their fiduciary obligations by failing

21   to abide by the requirements of the Mental Health Parity Act and excluding coverage for

22   medically necessary neurodevelopmental therapies to persons age seven and older with

23   covered DSM-IV conditions.  To remedy this breach, the Court therefore ORDERS

24   Defendants to reform the terms of their plans to remove that illegal exclusion.  <u>See id.</u> at

25

26

1881 ("In such instances equity courts would 'mold the relief to protect the rights of the beneficiary according to the situation involved.'").

### 4. Injunction Requiring Notification of Beneficiaries

Next, the Court considers whether it should order Defendants to "inform class members about the removal of the illegal exclusion from contracts in effect from January 1, 2006[,] to the present." See Dkt. # 91.  The Court GRANTS the request.

Federal Rule of Civil Procedure 23(c)(2)(a) and (d) authorizes courts to direct appropriate notice to (b)(2) class members regarding "any step in the action."  As a result, Defendants do not dispute that notice is appropriate.  Rather, they ask only that the Court "stay dissemination of notice pending Group Health's appeal of the Court's permanent injunction or, in the alternative, permit Group Health to include language in the notice warning class members of the potential effect of Group Health's appeal."  They also ask the Court to "permit the parties to work collaboratively on the form and content of notice to these class members."  Dkt. # 100 at 26.

The Court declines Defendants' first request.  As it has previously stated, it does not find the issue of Defendants' liability to be a close question.  As both this Court and a number of state courts have found, there is no conflict between the Neurodevelopmental Therapies Mandate and the Mental Health Parity Act, see Dkt. # 77 at 17–18, and the plain text of RCW 48.46.291(2)(a)(i), (b)(i), and (c)(i) plainly precludes the very limitation Defendants maintained, see Dkt. # 77 at 18–23.  The Court does agree, however, that it would be beneficial to allow the parties to work collaboratively on the form and content of the proposed notice and agrees with Defendants' request to include a warning about the ramifications of a possible appeal. See Reply (Dkt. # 107) at 5 n.2 (noting that Plaintiffs do not object to working collaboratively).  Accordingly, the Court ORDERS the parties to file a joint proposed notice within 21 days of the date of this Order.  If they are unable to reach an

agreement, each is directed to file individual proposed notices[8] and the Court will select the one it finds more appropriate.

### 5. Injunction Requiring Defendants to Process Claims

Finally, the Court considers the last common request:  that it order Defendants "to process all claims incurred in the past, without application of the illegal exclusion," once and if submitted by one of the notified beneficiaries.  The Court notes that this is precisely the sort of relief the Supreme Court found "consistent with § 502(a)(1)(B)" in CIGNA. 131 S. Ct. at 1876 (explaining that "step 2 orders recovery of the benefits provided by the 'terms of [the] plan' as reformed").  Accordingly, the Court GRANTS this last common request.  Defendants are ORDERED to process any and all claims for services incurred during the time periods in question provided they are submitted by a subclass member to Defendants within one year of the date that notice is disseminated.[9]

### ii. Futility

Having concluded that Plaintiffs are entitled to each of the common requests for relief they seek on behalf of the three incurred claims subclasses, the Court turns to the first uncommon request:  the second and third subclasses' contention that exhaustion would have been futile.  The Court agrees.

The Ninth Circuit has stated that "[a] district court has discretion to waive the exhaustion requirement, Se. Alaska Conservation Council v. Watson, 697 F.2d 1305, 1309 (9th Cir.1983), and should do so when exhaustion would be futile." Horan v. Kaiser Steel Ret. Plan, 947 F.2d 1412, 1416 (9th Cir. 1991), abrogated on other grounds as recognized by Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 673–74

---

[8]  The Court leaves it to the parties to determine if each subclass requires its own notice or if a single general notice will suffice.

[9]  The Court finds it appropriate to use the same one-year limitation period that Defendants employ.

ORDER GRANTING IN PART PLAINTIFFS' MOTIONS
FOR CLASS CERTIFICATION AND SUMMARY JUDGMENT - 18

(9th Cir. 2011) (explaining that the circuit now applies a different standard for determining whether a decision was arbitrary and capricious when "an administrator operates under a structural conflict of interest").[10]  And it has found that waiver is particularly appropriate in cases in which the administrator contends in its briefs "that the plaintiffs are not entitled to [the benefit sued for] under the terms of the Plan."  Id.

This is precisely that case.  Defendants' official litigation position was that, pursuant to the terms of the Plan, Plaintiffs were not entitled to the benefits they seek. Dkt. # 7 at 13–14 ("The Denial Was Consistent with the Plan Terms.").  And, in response to Plaintiffs' argument that the Plan itself fails to comport with the requirements of Washington law, Defendants maintain that Washington law does not require the coverage Plaintiffs contend.  Id. at 14–18.  In short, the Court is "fully apprised of the administrator's expertise and its decision as to the merits of the plaintiffs' claim."  Id.  It grants partial judgment to the subclass, finding that exhaustion would have been futile.

### iii.  Application of the One-Year Contractual Bar

Finally, the Court considers the last uncommon request—that the Court preclude Defendants from relying on their contractual one-year bar to deny the claims of the "Unsubmitted and Unexhausted Incurred Claims Subclass."  The Court again agrees.

As discussed above, the Court has reformed Defendants' contracts pursuant to ERISA § 502(a)(3) to bring them into compliance with Washington law.  However, as the Supreme Court recognized in CIGNA, this relief is effectively useless unless courts can also act to ensure that aggrieved beneficiaries can be made whole under the

---

[10]  The Court does not consider whether exhaustion may not be required in this case, see Graphic Commc'ns Union v. GCIU-Emp'r Ret. Benefit Plan, 917 F.2d 1184, 1187 (9th Cir.1990) (explaining that the exhaustion requirement applies to a benefits claim but not to a fiduciary breach claim because the fiduciary claim alleges a violation of ERISA itself), as Plaintiffs have not raised that issue.

reformed terms.  131 S. Ct. at 1881 ("Equity courts, for example, would reform contracts to reflect the mutual understanding of the contracting parties where 'fraudulent suppression[s], omission[s], or insertion[s],' 'material[ly] . . . affect[ed]' the 'substance' of the contract, even if the 'complaining part[y]' was negligent in not realizing its mistake . . . ." (some alterations in original) (internal citation omitted)); id. ("Nor did equity courts insist upon a showing of detrimental reliance in cases where they ordered 'surcharge.'  Rather, they simply ordered a trust or beneficiary made whole following a trustee's breach of trust.  In such instances equity courts would 'mold the relief to protect the rights of the beneficiary according to the situation involved.'"). Accordingly, to effectively protect the rights of the beneficiaries in the "Unsubmitted and Unexhausted Incurred Claims Subclass," the Court ORDERS Defendants to process claims as set forth in this Order without application of the one-year limitation period set forth in their contracts.

* * *

In sum then, for each of the reasons set forth above, the Court finds that the incurred claims subclasses are entitled to the injunctive and declaratory relief they seek.

**C. Special Master**

The Court declines to appoint a special master "to adjudicate individual issues for any members [of the three Rule 23(b)(2) incurred claim subclasses] who wish to pursue their damage claims in this case."  Simply put, the purpose for which Plaintiffs seeks to appoint a special master is not appropriate under Rule 23(b)(2).

As the Supreme Court made clear in Dukes, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  131 S. Ct. at 2557.  It "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  Id.  And it does not permit "the combination of individualized and classwide relief."  Id. at 2558

(emphasis added) ("In none of the cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction."). Accordingly, the Court declines Plaintiffs' request.

**2. The Surcharge Subclass**

Having resolved Plaintiffs' requests as to the incurred claims subclasses, the Court considers Plaintiffs' request to certify a "Surcharge Subclass" under Federal Rule of Civil Procedure 23(b)(2) or (b)(3). As noted above, Plaintiffs' defines this proposed subclass to include:

> All individuals who (1) are, or have been, beneficiaries under an ERISA-governed health plan that was delivered, issued for delivery, or renewed on or after January 1, 2006, by Group Health; and (2) required, when over the age of six, neurodevelopmental therapy for the treatment of a qualified mental health condition but did not receive such care due to Group Health's exclusion, or announced exclusion, of such care.

Dkt. # 89 at 7. Its stated purpose is to "seek a declaration that Group Health must disgorge, to Plaintiffs and each Subclass member who forewent care during the class period, the amount of money it saved with respect to that class member as a result of Group Health's breach of its fiduciary duties" and "also [to] seek notice to all Subclass members informing them they have the right to seek disgorgement from Group Health for this foregone care." Id. at 8.

Because the Court finds that certification is not appropriate under either Rule 23(b)(2) or (b)(3), it moves directly to those issues.

**A. Rule 23(b)(2)**

As noted above, "Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" Dukes, 131 S. Ct. at 2557. The key "is 'the indivisible nature of the

injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Id. (citation omitted).  The proposed class fails to satisfy this standard.

Certainly, Plaintiffs are correct that "a showing of detrimental reliance" is not absolutely required to demonstrate entitlement to surcharge. CIGNA, 131 S. Ct. at 1881.  The Court made that clear in CIGNA.  Id.  Rather, the difficulty is that, "to obtain relief by surcharge for violations of §§ 102(a) and 104(b), a plan participant or beneficiary must [still] show that the violation injured him or her." Id.  He or she must "show [actual] harm and causation." Id. at 1881–82.  And, as evident from Plaintiffs' request "that Group Health must disgorge, to Plaintiffs and each Subclass member who forewent care during the class period, the amount of money it saved with respect to that class member, Dkt. # 89 at 8 (emphasis added), this showing is individual to each proposed subclass member.  Each must prove that he or she elected not to seek medically necessary care because of Defendants' actions and each must prove individual harm.  In short, it is precisely the sort of claim that Dukes described as incompatible with a Rule 23(b)(2) class. 131 S. Ct. at 2557 ("Rule 23(b)(2) . . . does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.").  As a result, the Court declines to certify this class under Rule 23(b)(2).

**B.  Rule 23(b)(3)**

The Court has previously explained at length why it does not think certification under Rule 23(b)(3) to be appropriate.  Dkt. # 78 at 17–21.  It incorporates that discussion herein by reference and notes that Plaintiffs' attempt to cure the predominance problem by appointment of a special master only reinforces the Court's prior conclusion that individual questions predominate and that a class action would not be superior to other available methods of resolving the controversy.  See id.

* * *

Because the Court declines to certify Plaintiffs' proposed surcharge subclass, it does not address their other requests.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS Plaintiffs' motions IN PART.  It GRANTS IN PART Plaintiffs' motion to certify an incurred claims subclass (Dkt. # 90) and finds that they are entitled to the declaratory and injunctive relief they seek.  It DENIES Plaintiffs' motion (Dkt. # 89) to certify their proposed surcharge subclass.  And it DENIES Plaintiffs' request to appoint a special master.  Dkt. # 91.  The parties have 21 days from the date of this Order to submit their proposed class notices.

DATED this 17th day of October, 2012.

*MRS Lasnik*
Robert S. Lasnik
United States District Judge