1

2

3

4

5

6

7

8

9           UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
10                  AT SEATTLE

11  Z.D., by and through her parents and
    guardians, J.D. and T.D., individually, on        No.  C11-1119RSL
12  behalf of THE TECHNOLOGY ACCESS
    FOUNDATION HEALTH BENEFIT               ORDER DENYING
13  PLAN, and on behalf of similarly situated         PLAINTIFFS' MOTION FOR
    individuals,                                       PARTIAL SUMMARY
14                                                     JUDGMENT
                        Plaintiffs,
15
            v.
16
    GROUP HEALTH COOPERATIVE, *et.*
17  *al.*,

18                      Defendants.

19

20          This matter comes before the Court on Plaintiffs' "Motion for Partial Summary

21  Judgment Regarding (1) Group Health's New Visit Limitations on Neurodevelopmental

22  Therapy and (2) Group Health's Failure to Modify Its Contracts to Comply with the

23  Court's June 1, 2012 Order" (Dkt. # 114) ("Motion").  Plaintiffs argue that Defendants

24  ("Group Health") are violating Washington law and this Court's prior summary

25  judgment order ("Order," Dkt. # 77) by lumping all neurodevelopmental and

26

rehabilitative therapy together and imposing a sixty-visit cap on coverage for those therapies.  Plaintiffs also ask the Court to order Group Health to issue new certificates of coverage that reflect court-ordered changes in coverage to all members who have joined the affected plans since the Court's Order was issued.  For the reasons set forth below, the Court DENIES Plaintiffs' Motion.

## I.  BACKGROUND

This case concerns a dispute over healthcare benefits.  Plaintiffs claim that Group Health violated Washington's Mental Health Parity Act, RCW 48.46.291, by refusing to cover medically necessary neurodevelopmental therapy for insureds over the age of six[1] who suffer from conditions listed in the diagnostic and statistical manual of mental disorders ("DSM-IV-TR").  The Court agrees and has ordered Group Health to cease its unlawful denials of coverage based on age.  (Order, Dkt. # 77 at 24–25.)  The Court extensively detailed the facts underpinning this case in its prior Order.  (Id. at 2–5.)  It incorporates that discussion herein by reference.  The Court also certified a class and three subclasses.  (Class Certification Orders, Dkt. # 78, 119.)

## II.  DISCUSSION

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only factual disputes that might affect the outcome of the case under the governing law are "material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Group Health does not dispute that it applies the sixty-visit limit to neurodevelopmental services, and acknowledges that it has not yet updated its coverage certificates.  (Response, Dkt. # 143 at 2.)  Accordingly, there are no

---

[1] When this suit was filed, Group Health covered neurodevelopmental therapies for members aged six and under, as it was expressly required to do under Washington's Neurodevelopmental Therapy Mandate, RCW 48.44.450.

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2

genuine issues of material fact and resolution on summary judgment of the legal

questions before the Court is appropriate.

The Court will first address Plaintiffs' argument that Group Health's annual cap

on outpatient visits for neurodevelopmental therapy violates Washington's Mental

Health Parity Act and the Court's prior Order.  The Court will then turn to Plaintiffs'

argument that Group Health's failure to update its coverage certificates violates Group

Health's fiduciary duties under the Employee Retirement Income Security Act of 1974

("ERISA").  See 29 U.S.C. § 1104(a)(1).

### A.    Lump and Cap Limitation

Washington's Mental Health Parity Act ("Act") requires insurers to cover

"medically necessary outpatient and inpatient services provided to treat mental disorders

covered by the diagnostic categories listed in the most current version of the diagnostic

and statistical manual of mental disorders," with a few exceptions not relevant to this

case.  RCW 48.46.291(1).  The Act requires that every Washington insurance plan

provide the same level of coverage for mental health services as the plan provides for

"medical and surgical services." See RCW 48.46.291(2)(c).  As relevant here, the Act

provides: "Treatment limitations or any other financial requirements on coverage for

mental health services are only allowed if the same limitations or requirements are

imposed on coverage for medical and surgical services."  RCW 48.46.291(2)(c)(i).

Plaintiffs assert that Group Health continues to violate the Act and the Court's

Order by capping the number of neurodevelopmental therapy visits per year that it will

cover.  Under the plain language of the Act, however, the cap is a permissible treatment

limitation if it is also imposed on coverage for "medical and surgical services."  Id.

Group Health covers a total of sixty outpatient visits per year for "rehabilitation

services" to "restore function following illness, injury or surgery." (Towill  Decl., Dkt.

#139 at 3; Hamburger Decl., Dkt. # 116-1 at 16, 25.)  Rehabilitation services include

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3

1    occupational, physical and speech therapy.  (Id.)  The Washington Neurodevelopmental

2    Therapy Mandate defines "neurodevelopmental therapies" as occupational, physical and

3    speech therapy.[2]  See RCW 48.44.450(2).  Group Health also lumps all rehabilitation

4    services together for purposes of determining whether the cap has been reached.

5    (Hamburger Decl., Dkt. # 116-1 at 16.)  Plaintiffs' position is that because Group Health

6    does not "lump and cap" outpatient visits for "medical and surgical services" generally,

7    it may not impose the sixty-visit cap on neurodevelopmental services to treat mental

8    health disorders.  The problem with Plaintiffs' position is that it demands more than

9    parity with Group Health's coverage of occupational, physical and speech therapy to

10   treat physical ailments.[3]  The Act does not require unlimited coverage for a therapy

11   medically necessary to treat a mental health disorder when coverage of the same therapy

12   to treat physical disorders is limited. Needless to say, the Court's prior Order requires

     nothing more than does the statute.

13          Plaintiffs' primary response to this conclusion is that Group Health's

14   rehabilitation services benefit is too narrow a comparator against which to measure

15   Group Health's coverage of neurodevelopmental therapies to treat mental health

16   conditions.  (Dkt. # 114 at 15.)  They argue that the plain language of the statute permits

17   _____

18         [2] Plaintiffs' Amended Complaint requests a declaration that Group Health may not
     "impermissibly limit services to treat conditions listed in the DSM-IV-TR, including
19   neurodevelopmental and behavioral therapies."  (Compl., Dkt. # 3 at 12.)  Plaintiffs' summary
     judgment motions and the Court's orders, however, have discussed only neurodevelopmental
20   therapies.  Neither Plaintiffs' motions, the Court's prior Order, nor this order address coverage
     of "behavioral" therapies.  See, e.g., McHenry v. PacificSource Health Plans, 679 F. Supp. 2d
     1226, 1231–32 (D. Or. 2010) (discussing Applied Behavioral Analysis therapy as a treatment
21   for Autism).  The Court expresses no opinion as to whether Washington's Mental Health Parity
     Act requires Group Health to cover behavioral therapies that do not fall within the statutory
22   definition of neurodevelopmental therapies, and if it does, whether such behavioral therapies
     would be subject to the sixty-visit cap.

23         [3] Plaintiffs do not assert that Group Health has refused to cover any
24   neurodevelopmental therapy for a mental health disorder on the grounds that it is "non-
     restorative" or not rehabilitative.  Any denial of coverage on that basis would clearly violate the
25   Court's prior Order.  (Order, Dkt. # 77 at 23.)

26   ORDER DENYING PLAINTIFFS' MOTION FOR
     PARTIAL SUMMARY JUDGMENT - 4

comparison only to coverage of medical and surgical services generally.  Plaintiffs' argue that the legislature's use of the conjunctive "and" between medical and surgical as well as the plural "services" makes clear that only treatment limitations or financial limitations imposed on all medical and surgical benefits, broadly defined, may be applied to services obtained to treat a mental health condition.

The Court disagrees because the therapies covered under Group Health's rehabilitation benefit—occupational, physical and speech therapies—are exactly the same therapies Plaintiffs want covered when medically necessary to treat mental health disorders.  The Court does not endorse the selection of narrow compartors to assess coverage requirements under the Act, but in this case, where Group Health has a specific benefit addressing the exact therapies for which Plaintiffs seek coverage, that benefit is not too narrow a comparator.

Contrary to Plaintiffs' argument, the sixty-visit cap does not violate the Act in the same way that the previously-imposed age limit did.  The problem with the age limit was that it precluded coverage of any neurodevelopmental therapy to treat mental health disorders of insureds over the age of six, even though no similar age limit was applied to medical and surgical services.  In contrast, the sixty-visit cap is applied to a set of therapies whether obtained after illness, injury or surgery or to treat mental health disorders.

The Court's conclusion is unchanged by authority interpreting the federal mental health parity act or California's parity act.  The federal government's interim final rules implementing the federal mental health parity act are unpersuasive because those rules establish a scheme whereby all benefits are classified into six benefits classifications.  See 75 Fed. Reg. 5410-01, 5412 (Feb. 2, 2010).  Washington's Act does not establish a similar benefits classification scheme.

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5

California's Mental Health Parity Act, California Health & Safety Code § 1374.72, is not directly analogous to Washington's statute.  In <u>Harlick v. Blue Shield of California</u>, the Ninth Circuit held that California's Parity Act required coverage of "all medically necessary treatments" for "nine specified 'severe' mental illnesses."  686 F.3d 699, 716 (9th Cir. 2012).  The court expressly rested its conclusion about the scope of coverage required on the fact that California's Parity Act applies only to nine illnesses: "It limits insurer liability by limiting the illnesses to which it applies, not by limiting medically necessary treatments."  <u>Id.</u>  In clear contrast, Washington's Act requires coverage of treatment for nearly all mental health conditions listed in the DSM-IV-TR, and allows limits on medically necessary treatments if those limits are also applied to treatment for medical and surgical services.  <u>See</u> RCW 48.46.291.

Group Health's sixty-visit cap on neurodevelopmental therapies to treat mental health disorders is allowed under the Act because Group Health applies the exact same cap on coverage to those therapies when used to treat physical health conditions. Accordingly, the Court denies Plaintiffs' motion for partial summary judgment on the sixty-visit cap issue.

### B.    Coverage Certificates

When Plaintiffs filed their Motion, Group Health had not modified its coverage certificates, which are the written terms of its insurance plans, to comply with the Act or the Court's Order.  (Towill Decl., Dkt. # 139 at 4–11.)  Susan Towill, Group Health's Executive Director for Contracts and Coverage, explained in a declaration that Group Health decided to send a letter to beneficiaries notifying them of changes to coverage instead of filing endorsements with the State Office of the Insurance Commissioner ("OIC") to change the coverage certificates.  (<u>Id.</u>)  Towill attached to her declaration a draft of Group Health's 2013 "master" coverage certificate, which Group Health asserts reflects all required changes to its insurance plans and which it will file with the OIC

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6

and issue to insureds as they renew throughout this year.[4]  (Dkt. # 139 at 11 & Ex. N.)

Plaintiffs argue that Group Health's failure to modify its coverage certificates before issuing certificates to new plan subscribers, violated Group Health's fiduciary duties under ERISA.  To be clear, Plaintiffs make no allegation that Group Health has actually denied coverage for neurodevelopmental therapies.  Plaintiffs report the opposite; class members have "consistently" told class counsel that "they are now able to restart or continue neurodevelopmental therapy services that had been terminated by Group Health due to its age limitation."  (Hamburger Decl., Dkt. # 116 at ¶ 3.)

The Court does not agree with Plaintiffs' argument that Group Health has failed to perform its fiduciary duties under ERISA.  ERISA imposes fiduciary duties on plan administrators and requires that they administer plans "in the interests of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1); Varity Corp. v. Howe, 516 U.S. 489, 506 (1996).  Plaintiffs are correct that a plan administrator that "knowingly and significantly" deceives beneficiaries in order to save money or lies to beneficiaries about the plan violates its fiduciary duty.  Varity Corp., 516 U.S. at 506.  But that is simply not what has happened in this case.  Plan administrators do have a duty to correct written plan descriptions when they become misleading to participants.  See McAuley v. Int'l Bus. Machs. Corp., 165 F.3d 1038, 1046 (6th Cir. 1999).  But Group Health has done that.  It notified its beneficiaries of the Court-ordered changes to its coverage of neurodevelopmental therapies through:  (1) the class notice it mailed in July of 2012 (Guaderrama Decl., Dkt. # 136 at ¶ 9); (2) a letter, approved by state insurance regulators, that Group Health mailed to beneficiaries explaining the changes to its coverage (Towill Decl., Dkt. # 139 at ¶ 29 & Ex. L); (3) changes to its website (Boehm

---

[4] Group Health represents to the Court that it will modify the confusing language regarding its exclusion of "tutoring" for insureds with mental retardation.  (Opposition, Dkt. # 143 at 17).  The Court takes Group Health at its word.  The Court will not hesitate to impose sanctions if Group Health fails to revise this exclusion as promised.

1   Decl., Dkt. # 138 at ¶¶ 3–4); and (4) instructions to all of its customer service

2   representatives that there is no longer an age limit for neurodevelopmental therapies

3   (Clark Decl., Dkt. # 137 at ¶ 3).  In short, Group Health has not engaged in any

4   intentional deception regarding the court-ordered changes to its coverage.

5          Plaintiffs are also correct that ERISA has an "elaborate scheme" for enabling

6   beneficiaries to learn about their rights and obligations under a plan, which is built

7   around "reliance on the face of written plan documents."  Curtiss-Wright Corp. v.

8   Schoonejongen, 514 U.S. 73, 83 (1995).  That scheme, however, is not as rigid as

9   Plaintiffs suggest.  For example, ERISA gives plan administrators 210 days after the end

10  of the plan year in which an amendment is adopted to furnish beneficiaries with a

    summary of the new amendment.  See id. (citing 29 U.S.C. § 1024(b)(1)).

11         Group Health has explained that it did not change its coverage certificates to

12  reflect the court-ordered changes to coverage under its ERISA-governed plans because

13  doing so and remaining in compliance with state regulatory requirements would have

14  been burdensome to Group Health and state regulators.  (Dkt. # 134 at 14.)  That

15  explanation is reasonable and satisfies the Court.  Plaintiffs respond that Group Health's

16  explanation is insufficient because any state regulation limiting the ability of an insurer

17  to revise its ERISA plan documents to reflect coverage changes is preempted by

18  ERISA's fiduciary duties provision.

19         There are several problems with Plaintiffs' preemption argument.  First, Plaintiffs

20  only raise federal preemption in their Reply.  Compare Reply, Dkt. # 141 with Motion,

21  Dkt. # 114; see Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court

    need not consider arguments raised for the first time in a reply brief.").  Second, the

22  Supreme Court has said that ERISA's fiduciary duties provision does not impose on an

23  administrator amending a plan, reporting requirements beyond the "comprehensive set

24  of reporting and disclosure" requirements of the statute, which are found at 29

25

26  ORDER DENYING PLAINTIFFS' MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 8

U.S.C. §§ 1021–1031.  See Curtiss-Wright, 514 U.S. at 83.  Accordingly, Plaintiffs probably should have rested any preemption argument on one of those disclosure requirements, not ERISA's fiduciary duty provision.  Finally, insurance companies providing benefits plans subject to ERISA are not necessarily "relieved from state insurance regulation."  See FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990).  Before finding a state insurance regulation preempted, courts apply a two-part test to determine whether or not the state provision falls within ERISA's savings clause.  See Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341–42 (2003).  Plaintiffs' Reply fails to make any argument that the state insurance regulations to which Group Health points fall outside of ERISA's savings clause.  For these reasons, the Court will not address Plaintiffs' preemption argument further.

Group Health informed its members of the changes to its coverage of neurodevelopmental therapy mandated by the Court's Order.  Accordingly, the Court denies Plaintiffs' Motion for partial summary judgment based on Group Health's failure to modify its 2012 coverage certificates.

### III.  CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for partial summary judgment (Dkt. # 114) is DENIED.


Dated this 8th day of April, 2013.

Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9